IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

## CASE NO. 20-4342, 21-3282

---

Weatherford U.S., L.P.,
*Petitioner,*
v.
U.S. Department of Labor, Administrative Review Board
*Respondent,*
v.
Estate of Daniel A. Ayres
*Intervenor.*

---

consolidated with

---

No. 21-3017

---

Estate of Daniel A. Ayres
*Petitioner,*
v.
U.S. Department of Labor, Administrative Review Board
*Respondent,*

Weatherford U.S., L.P.
*Intervenor.*

---

On Appeal From The Administrative Review Board
Case No. ARB 2018-0006 : ARB 2018-0074

**FIRST BRIEF OF WEATHERFORD U.S., L.P.**

---

/s/David A. Campbell
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Andrea V. Arnold (0099455)
**LEWIS BRISBOIS BISGAARD & SMITH, L LP**
1375 E. 9th Street, Suite 2250
Cleveland, OH  44114
Telephone: 216-344-9422
Facsimile:   216-344-9421
Email:david.a.campbell@lewisbrisbois.com
        donald.slezak@lewisbrisbois.com
        andrea.arnold@lewisbrisbois.com

*Attorneys for Weatherford U.S., L.P.*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Pursuant to 6 Cir. R. 26.1, Petitioner and Intervenor, Weatherford U.S., L.P. makes the following disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation that owns 10% or more of its stock?

      No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

      No.

# **TABLE OF CONTENTS**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ................................................................................ i

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................1

I.     STATEMENT OF JURISDICTION .......................................................1

II.    STATEMENT OF ISSUES ...................................................................2

III.   STATEMENT OF THE CASE ..............................................................3

    A.   Weatherford's Williston, North Dakota Operations ........................3

    B.   Ayres' Employment With Weatherford .........................................3

    C.   Ayres' Work Assignment .............................................................4

    D.   Ayres' Allegation of Making Complaints Is Not Supported By His Co-Workers' And Managers' Depositions ..............................6

    E.   Ayres' Performance Issues ...........................................................8

    F.   Ayres' Request To Be Transferred ...............................................9

    G.   The Reduction In Force ................................................................9

    H.   Ayres' Allegation Of Retaliation ...............................................11

    I.    Other Weatherford Employees ...................................................11

    J.   Ayres' Post-Employment Earnings .............................................13

    K.   Ayres' Federal Court Lawsuit Against Weatherford .....................14

    L.   Proceedings Before The Department Of Labor .............................15

IV.   SUMMARY OF THE ARGUMENT ....................................................20

V.    ARGUMENT .....................................................................................21

    A.   Standard of Review ....................................................................21

B.    Ayres' Claims Were Previously Decided By The District Court, And Res Judicata And Collateral Estoppel Should Be Applied To Bar Ayres' Claim ................................................................ 22

    1.    Res judicata ................................................................ 23

    2.    Collateral estoppel ........................................................ 25

C.    The ALJ And ARB Used The Wrong Standard Of Review For Discrimination Claims Under The STAA ..................................... 30

D.    Under Either Standard, Ayres' Termination Was Pursuant To A Non-Discriminatory Reduction-in-Force and His Claim Fails on the Merits .................................................................................. 32

    1.    Ayres' Claim Fails as a Matter of Law Because He Cannot Satisfy the Appropriate Standard for His STAA Claim - the McDonnell Douglas Standard ........................... 32

        a.    Ayres Cannot Satisfy His Prima Facie Case Under the McDonnell Douglas Standard .............................. 34

        b.    Ayres Cannot Show That Respondent's Legitimate, Non-Discriminatory Reason for Eliminating Ayres' Position Was Pretextual ............... 38

    2.    Ayres Cannot Satisfy he Standard Applied by the ALJ and ARB, and His Claims Fail as a Matter of Law .............. 40

        a.    Ayres Cannot Satisfy His Prima Facie Case Under *Palmer* .................................................................. 40

        b.    Respondent Would Have Eliminated Ayres' Position as Part of the Reduction-In-Force, Regardless of Ayres' Alleged Protected Activity ........ 42

E.    Damages Awarded Are Not Supported By The Substantial Evidence And Their Award Was An Abuse Of Discretion ............. 44

    1.    The ARB Properly Reversed The ALJ's Award Of Punitive Damages ............................................................ 44

    2.    Ayres' Damages Are Limited By The After-Acquired Evidence of Ayres' Fraudulent Statements to Respondent ...... 44

    3.    Ayres' Damages Should Be Tolled As Of September 2013, And Cut Off As Of April 2014 Due To Ayres' Disability And Failure To Mitigate His Damages ................ 46

    4.    Ayres' Damages Are Limited By His Post-Employment Earnings .......................................................................... 47

F.    The Award Of Attorney Fees And Costs Should Be Reversed If The ARB'S Decision On The Merits Is Reversed .......................... 49

G.    Claimant's Counsel is Not Entitled to Any Award of Attorneys' Fees and/or Costs Pertaining to Any Work Outside of the DOL Proceedings ................................................................................. 49

H.    The Attorney Fees And Costs Awarded Are Unreasonable ............ 51

    1.    Claimant's Request For Attorney's Fees Are Unreasonable And Should Be Reduced To Reflect The Appropriate Market Rate For Comparable Attorneys ............ 52

    2.    The Bills Submitted for Claimant's Counsel's Work Do Not Describe His Work In Detail and, Therefore, the Fees Should Be Reduced ................................................... 53

I.    The Award of Attorney's Fees and Costs Was Inappropriate Because This Case Was Close, and Defendant Acted in Good Faith .............................................................................................. 56

VI.    CONCLUSION .................................................................................. 58

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Aftermarket Tech Corp. v. Whatever It Takes Transmissions*,
No. 3:00CV-326-R, 2005 U.S. Dist. LEXIS 22496 (W.D. Kent.
Oct. 3, 2005).......................................................................................... 56

*B&G Mining, Inc. v. DIR., OWCP*,
522 F.3d 657 (6th Cir. 2008). Here, the Order............................................. 51

*Bechold v. IGW Systems, Inc.*,
817 F.2d 1282 (7th Cir. 1987)............................................................. 39, 43

*Beck v. Buckeye Pipeline Servs. Co.*,
502 Fed. Appx. 447 (6th Cir. 2012) ........................................................ 38

*Bettner v. Admin Review Bd.*,
539 F.3d 613 (7th Cir. 2008)................................................................... 30

*Binta B. v. Gordon*,
710 F.3d 608 (6th Cir. 2013).................................................................. 49

*BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*,
234 F.Supp. 3d 760 ............................................................................. 49

*Brady v. Thurston Motor Lines, Inc,.*
753 F.2d 1269 (4th Cir. 1985)................................................................. 46

*Brown- Baumbach v. B&B Auto, Inc.*,
437 F. App'x 129 (3d Cir. 2011) ............................................................ 37

*Brown-Baumbach v. B&B Auto, Inc.*,
No. 09- 3962, 2010 U.S. Dist. LEXIS 67472 (E.D. Pa. July 6,
2010)................................................................................................ 37, 42

*Budri v. FirstFleet Inc.*,
Civil Action No. 3:19-CV-0409-N-BH, 2019 U.S. Dist. LEXIS
188251 (N.D.Tx. Sept. 20, 2019)............................................................ 25

*Burnett v. Quest Diagnostics, Inc.*,
  2005 U.S. Dist. LEXIS 13370 (E.D. Mich. April 21, 2005)..........................52

*Calhoun v. United States DOL*,
  576 F.3d 201 (4th Cir. 2009)...................................................................30

*Calmat Co. v. United States DOL*,
  364 F.3d 1117 (9th Cir. 2004)................................................................30

*Case by Case v. United Sch. Dist.*
  No. 233, 157 F.3d 1243 (10th. Cir. 1998)................................................54

*Chemetall GmbH v. ZR Energy, Inc.*,
  2002 U.S. Dist. LEXIS 158 (N.D. Ill. Jan. 7, 2002)....................................56

*Clark County Sch. Dist. v. Breeded*,
  532 U.S. 268 (2001) ...............................................................................37

*Clean Harbors Environ. Servs., Inc. v. Herman*,
  146 F.3d 12 (1st Cir. 1998)......................................................................35

*Cleveland Area Bd. of Realtors v. City of Euclid*,
  965 F.Supp. 1017 (N.D. Ohio 1997) .........................................................55

*Cobbins v. Tenn. Dep't of Transp.*,
  566 F.3d 582 (6th Cir. 2009)...................................................................25

*Coleman v. Cardinal Health 200, LLC*,
  No. 12-11154, 2013 U.S. Dist. LEXIS 159473 (E.D. Mich. Nov. 7,
  2013)......................................................................................................33

*Conley v. Yellow Freight Sys.*,
  521 F. Supp. 2d 713 (E.D.Tn. 2007) ........................................................25

*Corwin v. Quinonez*,
  2013 U.S. Dist. LEXIS 334 (N.D. Ohio Jan. 2, 2013)................................56

*Dreiger v. Mid-American Club*,
  No. 95C4490, 1998 U.S. Dist. LEXIS 2536 (N.D. Ill. Mar. 5,
  1998)..................................................................................................46, 47

*Duhaney v. Attorney Gen. of U.S.*,
  621 F.3d 340 (3rd Cir. 2010) ..................................................................26

*Fenton v. HiSan, Inc.*,
  174 F.3d 827 (6th Cir. 1999)................................................................36, 41

*Gage v. Warren Tp. Committee & Planning Bd. Members*,
  463 Fed. Appx. 68 (3rd Cir. 2012)............................................................ 26

*Germann v. Dep't of Labor*,
  206 F. App'x 662 (9th Cir. 2006) .................................................. 26, 28, 29

*Gibbs v. Gibbs*,
  210 F.3d 491 (5th Cir. 2000).................................................................... 56

*Hamilton's Bogarts, Inc. v. Michigan*,
  501 F.3d 644 (6th Cir. 2007).................................................................... 26

*Hapgood v. City of Warren*,
  127 F.3d 490 (6th Cir. 1997).................................................................... 23

*Harkless v. Husted*,
  2011 U.S. Dist. LEXIS 62158 (N.D. Ohio Mar. 3 I 2011)........................... 53

*Hensley v. Exkerhart*,
  461 U.S. 424 (1983) ................................................................................ 49

*Irizarry v. Lily Transp. Corp.*,
  No. 3:15cv1386, 2017 U.S. Dist. LEXIS 111158 (Dist. Conn. July
  18, 2017)............................................................................................31, 32

*Knology, Inc. v. Insight Communs. Co.. L.P.*,
  460 F.3d 722 (6th Cir. 2008).................................................................... 56

*Krupp v. Metropolitan Life Ins. Co.*,
  174 F. Supp. 2d 545 (E.D. Mich. 2001)..................................................... 56

*Lopez v. Star Tex Gasoline & Oil Dist.*,
  No. 2:14-CV-52, 2015 U.S. Dist. LEXIS 188916 (S.D. Tex. June
  3, 2015) .................................................................................................. 31

*Marinkovic v. Vasquez*,
  No. GLR-14-3069, 2015 U.S. Dist. LEXIS 77463 (Dist. Md. June
  16, 2015) (dismissing claimant's STAA claim for refusal to drive
  in connection with a 2014 complaint due to claimant's failure to
  satisfy the prima facie case used in Title VII claims).................................. 31

*McKennon v. Nashville Banner Publ'g Co.*,
513 U.S. 352 (1995) ................................................................. 45

*Melton v. United States DOL*,
373 F. App'x 572 (6th Cir. 2010) ............................................ 32

*Melton v. United States DOL*,
373 Fed. Appx. 572 (6th Cir. 2010) ......................................... 30

*Mitchell v. Detroit Med. Ctr.*,
No. 99-1402, 2000 U.S. App. LEXIS 15941 (6th Cir. July 3, 2000) ............. 38

*Monahan v. N.Y.C. Dep't of Corr.*,
214 F.3d 275 (2d Cir. 2000) .................................................... 24

*Mulhall v. Ashcroft*,
287 F.3d 543 (6th Cir. 2002) ............................................... 36, 41

*N.L.R.B. v. Ryder System Inc.*,
983 F.2d 705 (6th Cir. 1993) ................................................... 46

*Oda. Natural Gas Co. v. Apache Corp.*,
355 F. Supp. 2d 1246 (N.D. OK. 2004) ...................................... 55

*Oliveri v. U.S. Food Serv.*,
No. 3:09cv921, 2010 U.S. Dist. LEXIS 11199 (M.D.Pa. Feb. 9,
2010) ................................................................................. 24

*Patterson v. P.H.P. Healthcare Corp.*,
90 F.3d 927 (5th Cir. 1996), *cert. denied,* 117 S.Ct. 767 (1997) .................. 46

*Post v. Hartford Ins. Co.*,
501 F.3d 154 (3rd Cir. 2007) ................................................... 26

*R&B Transp., LLC v. United States Department of Labor*,
618 F.3d 37 (1st Cir. 2010) ..................................................... 30

*Rachells v. Cingular Wireless Employee Sys., LLC*,
732 F.3d 652 (6th Cir. 2013) ................................................... 33

*Ridgley v. United States DOL*,
298 F. App'x 447 (6th Cir. 2008) ............................................. 30

*Roadway Express, Inc. v. Admin Review Bd.*,
   116 Fed. Appx. 674 (6th Cir. 2004) .........................................................21

*Robinson v. City of Edmond*,
   160 F.3d 1275 (10th Cir. 1998) ................................................................55

*Rosser v. Pipefitters Union Local*
   392, 885 F. Supp. 1068 (S.D. Ohio 1995)................................................57

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
   707 F.Supp.2d 737 (N.D. Ohio 2010).......................................................55

*Sheridan v. NGK Metals Corp.*,
   609 F.3d 239 (3d Cir. 2010)......................................................................26

*Stark v. Hartt Transp. Sys.*,
   37 F. Supp. 3d 445 (Dist. Me. 2014) .......................................................31

*Talismanic Props., LLC v. City of Tipp City*,
   742 Fed. Appx. 129 (6th Cir. 2018) ........................................................23

*Estate of Thompson v. Sun Life Assur. Co. of Can.*,
   No.4:07-CV-594-Y, 2009 U.S. Dist. LEXIS 27114 (N.D. Tex.
   Mar. 31, 2009) ..........................................................................................56

*Thurman v. Yellow Freight Sys., Inc.*,
   90 F.3d 1160 (6th Cir. 1996)...............................................................45, 46

*United State, Local 307 v. G&M Roofing & Sheet Metal Co.*,
   732 F.2d 495 (6th Cir. 1984)....................................................................53

*United States Plywood-1 Corp. v. General Plywood Corp.*,
   370 F.2d 500 (6th Cir. 1966).....................................................................56

*United States v. NEC Corp.*,
   11 F.3d 136 (11th Cir. 1993).....................................................................44

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) .............................................................................30, 33

*White & White, Inc. v. American Hospital Supply Corp.*,
   786 F.2d 728 (6th Cir. 1986)...............................................................55, 57

4866-9169-5140.9

*William Powell Co. v. Nat'l Indem. Co.*,
  18 F.4th 856 (6th Cir. 2021) .................................................................... 23

*Yellow Freight Sys. v. Reich*,
  27 F.3d 1133 (6th Cir. 1994) .................................................................. 30

*Zarwasch- Weiss v. Skf Economics United States*,
  838 F.Supp. 654 ................................................................................ 53, 54

*Zarwasch-Weiss v. Slif Economics United States*,
  838 F.Supp. 2d 654 (N.D. Ohio 2012) .................................................... 51

**State Cases**

*Bittner v. Tri-County Toyata*,
  58 Ohio St. 3d 143 (Ohio 1991) ........................................................ 49, 50

*Daniel Ayres v. J.P. Jenks, Inc.*,
  Case No. 14cv01631 ................................................................................ 13

*Daniel Ayres v. Weatherford U.S., L.P.*,
  Case No. 4:13cv00600 . (Appx., Volume X, Pages 1766-70)
  ............................................................ 2, 14, 24, 26, 27, 29, 45, 49, 52, 53

*Grava v. Parkman Twp.*,
  73 Ohio St. 3d 379, 1995- Ohio 331, 653 N.E.2d 226 (Ohio 1995) ........... 23, 24

*Greeley v. Miami Valley Maint. Constrs., Inc.*
  49 Ohio St.3d 228 (1990) ........................................................................ 24

*Holzemer v. Urbanski*,
  86 Ohio St. 3d 129, 1999- Ohio 91, 712 N.E.2d 713 (Ohio 1999) ................. 23

*Nat'l Amusements, Inc. v. City of Springdale*,
  53 Ohio St. 3d 60, 558 N.E.2d 1178 (Ohio 1990) ...................................... 24

*Palmer v. Canadian Nation Railway, Illinois Central Railroad
  Company*,
  ARB Case. No. 2014-FRS-154 .................................................................. 40

*Southworth v. Northern Trust Secs.*,
  2013-Ohio-2917 (Ohio Ct. App., Cuyahoga County July 3, 2013) ............... 45

**Statutes**

49 U.S.C.S. § 31105........................................................................ 30, 34, 51

49 U.S.C.S. § 42121...................................................................................30

28 U.S.C. § 1296 ..........................................................................................1

49 U.S.C. § 31105(a)(A)-(B) ......................................................................34

49 U.S.C. § 31105(f) ...................................................................................25

FLSA........................................................................................................27, 28

O.R.C. § 4113.52........................................................................................22

Ohio Whistleblower Statute and the Fair Labor Standards Act .................... 14, 15

R.C. §§ 4112.01 et seq................................................................................13

STAA
.......................... 2, 3, 17, 22, 24, 25, 26, 29, 30, 31, 32, 34, 35, 36, 41, 54, 57

Surface Transportation Assistance Act...........................................................1

Whether the Administrative Law ...................................................................2

**Court Rules**

Cir. R. 34(a).................................................................................................1

**Treatises**

*Restatement (Second) of Judgments* § 24.................................................23, 24

**Other Authorities**

ARB NO. 2018-0006. (*Id.*)...........................................................................18

ARB No. 2018-0074. (*Id.*) ....................................................................18, 19

*Braun v. Ultimate charters, Inc.*, n. D.........................................................49

OSBA Report...............................................................................................52

*Roadway Express. Inc* ...................................................................51

Silver Line *MINUS* ......................................................................48

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Petitioner and Intervenor, Weatherford U.S., L.P. ("Weatherford" or "Respondent") requests oral argument in this case pursuant to 6 Cir. R. 34(a). Oral argument is appropriate in this case because the decision process would be aided significantly in light of the facts and legal arguments at issue in this appeal. The record in this case is significant because it involves two Administrative Review Board ("ARB") decisions that address a very lengthy procedural history. Oral argument will permit Weatherford's counsel to highlight the material portions of the record.

## I.   <u>STATEMENT OF JURISDICTION</u>

This appeal is from a final judgment by the Administrative Review Board (the "ARB"), confirming that Weatherford violated the Surface Transportation Assistance Act ("STAA"). This Court has jurisdiction under 28 U.S.C. § 1296. On December 31, 2020, Weatherford timely filed its Petition for Review with respect to the United States Secretary of Labor's decision as delegated to the Administrative Review Board in its Decision and Order dated November 18, 2020 (the "First Petition"). Subsequently, On March 24, 2021, Weatherford timely filed its Petition for Review with respect to the United States Secretary of Labor's decision as delegated to the Administrative Review Board in its Order Awarding

Attorney's Fees dated January 22, 2021 (the "Second Petition").  Both Petitions for

Review are appropriate and ripe for this Court to review.

## II.    STATEMENT OF ISSUES

1.    Whether the ARB's factual findings are appropriate and support the
ARB's decision pursuant to the substantial evidence standard employed
by the Sixth Circuit.

2.    Whether the ARB's legal conclusions are arbitrary, capricious, involve
an abuse of discretion, or are inconsistent with the law.

3.    Whether the Administrative Law Judge (the "ALJ") and the ARB erred
in failing to find Ayres' claims to be barred by the doctrine of collateral
estoppel because they involve identical facts and substantially similar
legal issues to the claims set forth in the Litigation.

4.    Whether the ALJ and the ARB erred in failing to find Ayres' claims to be
barred by res judicata.

5.    Whether the ALJ and the ARB erred in failing to apply the Title VII
standard utilized by this Court in addressing retaliation claims pursuant to
the STAA.

6.    Whether the ALJ and ARB's award of damages to Ayres is consistent
with the facts contained within the record and with applicable law.

7.     Whether the ALJ and ARB erred in awarding Ayres attorney's fees and
costs for the Department of Labor proceedings and the amount of the fees
and costs awarded.

8.    Whether the ARB erred in reversing the ALJ's award for punitive
damages.

## III.   STATEMENT OF THE CASE

### A.   Weatherford's Williston, North Dakota Operations.

Weatherford's business specializes in products and services for the oil and gas industry. (Appx., Volume IV, Page 812). The Weatherford location at issue in this matter is Weatherford's former Williston, North Dakota, fracking operations, which opened in 2012. (*Id.*). It is undisputed that the Williston fracking operations closed in March of 2014 unrelated Ayres' to claims or lawsuit. (Appx., Volume IV, Pages 620, 867)

### B.   Ayres' Employment With Weatherford.

Ayres was hired by Weatherford in April of 2012 as an Equipment Operator II. (Appx., Volume IV, Pages 638, 751). Equipment Operators in Weatherford's Williston fracking operations were hired to drive trucks and other equipment. (Appx., Volume III, Pages 570-71).

Prior to working in Williston, Ayres participated in Weatherford's training and was first assigned to Weatherford's operations in Texas. (Appx., Volume IV, Pages 644, 655). For the training, it is undisputed that Ayres was trained on compliance and safety, Department of Transportation compliance, and proper procedures for bringing complaints to Weatherford. (Appx., Volume IV, Pages 645-649, 653-54).

While assigned in Texas, Ayres filed one complaint against a co-worker. (Appx., Volume IV, Page 655). The complaint did not address any alleged wrongdoing done to him, but instead, related to a co-workers' threats of violence toward another co-worker. (Appx., Volume IV, Pages 654-55). It is undisputed that Weatherford responded promptly and effectively to Ayres' complaint, and Ayres admits that he considered Weatherford to have handled the complaint appropriately. (Appx., Volume IV, Pages 655). It is further undisputed that Weatherford did not take any retaliatory action toward Ayres as a result of the complaint but instead retained his employment. (Appx., Volume IV, Pages 655-56, 703).

Thereafter, Ayres began his fracking assignment with Weatherford in Williston, North Dakota. (Appx., Volume IV, Page 655). Ayres was hired to work three weeks in Williston and then return to Ohio for two weeks with pay. (Appx., Volume IV, Pages 643-44). However, for his first Williston trip, Weatherford requested that Ayres arrive three weeks early. (Appx., Volume IV, Page 656). This case arises out of Ayres' six-week assignment in Williston, North Dakota in July and August of 2012. (Appx., Volume IV, Pages 656, 751).

**C.    Ayres' Work Assignment.**

The Williston employees were broken into "fleets," and each fleet was broken down into two crews. (Appx., Volume IV, Page 818). Each crew had

between fifteen and twenty Equipment Operators. (*Id.*). Ayres' crew supervisor was Lee Hammons. (Appx., Volume IV, 659-60). In total, six or seven supervisors managed crews and reported directly to Terry Crabb. (Appx., Volume III, Page 571).

Weatherford's Williston fracking operations had only just begun when Ayres first arrived in Williston. (Appx., Volume IV, Pages 752, 816-17). In the hopes that there would be high customer demand in Williston, Weatherford aggressively increased hiring. (Appx., Volume IV, Pages 752, 817-18). Accordingly, Weatherford hired over one hundred Equipment Operators, including Ayres, in early 2012. (*Id.*). Although Weatherford had hoped business would keep the high number of Equipment Operators busy, it is undisputed that work was slow during July and August 2012, and the Equipment Operators had a lot of downtime. (Appx., Volume IV, Pages 763, 827-28). During the hearing, Ayres admitted "[t]o be honest, there was hardly any fracking for Weatherford…. "[t]here were nobody out working on the crews…. [Equipment Operators] were sitting there." (Appx., Volume IV, Pages 763, 767). Ayres further testified that "[n]inety percent of the people went back to the man camp" to sit because fracking work was not available. (Appx., Volume IV, Page 767). As a result, in order to keep the employees busy during the downtime, Weatherford supervisors tried to find non-Equipment Operator duties to keep the employees from "standing around."

(Appx., Volume III, Page 571).

Although this lawsuit arises out of Ayres' Commercial Driving License ("CDL") responsibilities, Ayres admits that he operated trucks on only a few occasions with Weatherford. (Appx., Volume IV, Pages 754, 758, 763). During his six weeks in Williston from July 10, 2012 until August 18, 2012, Ayres admits that he only drove trucks on four occasions, totaling only nine hours of drive time. (*Id.*). Ayres' own driving logs and time records demonstrate the following work history in Williston: (1) Ayres arrived in Williston on July 10, 2012; (2) Ayres drove on July 13, 2012; July 17, 2012; July 29, 2012; and July 30, 2012; (3) Ayres worked in Weatherford's office from July 31, 2012 through August 18, 2012; and (4) Ayres admits that he was working security over his last week of employment in Williston. (Appx., Volume IV, Pages 754-57, 762-63).

### D.    Ayres' Allegation of Making Complaints Is Not Supported By His Co-Workers' And Managers' Depositions.

Despite this limited driving record and the fact that may Equipment Operators were available to drive, Ayres alleges that he was asked to drive outside of his CDL certification on approximately three occasions, and that he successfully refused the assignment on each occasion. (Appx., Volume IV, Pages 659-68, 791). However, Ayres is unable to identify the dates he claims that he was asked to take assignments outside of his CDL certification, and he admits his time sheets and driver logs do not identify any of these dates. (Appx., Volume IV, Pages 765-66,

769).

Following the hearing before the ALJ, post-hearing depositions were held primarily to determine the veracity of Ayres' allegations regarding his claim that he was asked, on approximately three occasions, to operate equipment outside of his CDL. (Appx., Volume I, Page 57). These depositions did not support Ayres' version of the relevant facts. The witnesses presenting testimony through deposition were Ayres' coworkers Brian Gould, Richard Hansen, Brian Pirone, Dusty Tate and Ayres' supervisor Lee Hammons.[1]

Gould worked on the same crew as Ayres and admitted that he never witnessed Ayres being requested to take any actions that were unsafe or outside of his CDL. (Appx., Volume II, Pages 368-69). Hansen also worked on the same crew as Ayres and admitted that he never witnessed Ayres being requested to take actions that were unsafe or outside his CDL. (Appx., Volume II, Pages 416, 438-39). Pirone had no knowledge of any CDL issues between Ayres and Weatherford. (Appx., Volume II, Pages 395-97). Tate was also an Equipment Operator, denied that he ever directed Ayres to take assignments outside his CDL, and testified that it was in fact acceptable for an employee to inform Weatherford that the employee did not have a certain CDL certification because there were numerous employees in Williston that were available if a certain employee was not qualified for a

---

[1] Both Gould and Pirone considered Ayres to be a "friend." (Appx., Volume II, Pages 363, 386-87).

particular task. (Appx., Volume III, Pages 552-54). Finally, Ayres' supervisor, Hammons, testified that he was informed on one occasion by Ayres that he was not qualified to operate a certain pump, and Hammons recalls checking Ayres' CDL to confirm that he was not permitted to operate the pump and, thereafter, assigning the pump duty to another employee. (Appx., Volume III, Pages 568-69). Hammons recalls Ayres' driving restriction as nothing unusual and a non-issue. (Appx., Volume III, Pages 569-70).

### E.  <u>Ayres' Performance Issues</u>.

Despite Ayres' short time working in Williston, the hearing and deposition testimony showed that Ayres refused non-driving assignments, which were expected because driving duties were not as in-demand as anticipated and was confrontational with other employees. (Appx., Volume III, Pages 570-71; Appx., Volume IV, Pages 763, 817). Further, Ayres' co-workers recall Ayres being involved in an altercation on his last day of work in Williston. (Appx., Volume III, Pages 579-81; Appx., Volume II, Pages 369-72, 391-92). Because of the altercation, Ayres was driven separately from the other employee when headed to the airport that day for their previously scheduled flights out of North Dakota. (Appx., Volume III, Pages 579-81).

**F.    <u>Ayres' Request To Be Transferred</u>.**

Ayres met with Crabb on his last day of work in Williston. (Appx., Volume IV, Pages 690-91). It is undisputed that Ayres requested to be transferred out of the Williston operation at the meeting. (*Id.*).  Specifically, Ayres requested "either to go work...near Youngstown, Ohio, or to work at the Vernal, Utah shop." (Appx., Volume IV, Page 690).  The ALJ confirmed Ayres' request in the Decision. (Appx., Volume I, Page 63).

In response to Ayres' request to be transferred, Weatherford attempted to find Ayres work at the two locations identified by Ayres, and also at other locations outside of the Williston operation. (Appx., Volume IV, Pages 236-37). Indeed, the ALJ concluded that Weatherford sought positions outside of Williston to transfer Ayres, beginning with Ayres' preferred location of Youngtown, Ohio. (Appx., Volume I, Page 123). Further, the ALJ found that Crabb assisted Weatherford's Human Resources Department in the search to find Ayres a suitable transfer position. (Appx., Volume I, Pages 122-23). Weatherford kept Ayres on its payroll during this time. (Appx., Volume IV, Pages, 829-30).

**G.    <u>The Reduction In Force</u>.**

Due to a lack of work, the Williston fracking operations reduced the workforce in late 2012. (Appx., Volume IV, Pages 829-30; Appx., Volume II, Pages 426-27). The reduction impacted Equipment Operators beyond Ayres.

(Appx., Volume IV, Pages 786, 428). In total, sixteen employees were impacted by the reduction. (Appx., Volume IV, Pages 784-86). Fifteen of these employees held the Equipment Operator position. (Appx., Volume III, Page 492). At least four other Weatherford employees holding the Equipment Operator II position were subject to the same reduction as Ayres. (*Id.*).

Lee Hammons and Terry Crabb testified about the reduction-in-force process. Based on his three week on and two week off schedule, Ayres was scheduled to return to Williston in early September 2012. (Appx., Volume IV, Page 777). However, Crabb was instructed to trim the staff at that time due to lack of work. (Appx., Volume IV, Pages 829-30). Crabb initially requested Ayres and other Equipment Operators to remain home while getting paid. (*Id.*). In order to determine the ultimate reduction, Crabb requested each supervisor to review the crews and determine which employees were essential. (Appx., Volume IV, Pages 830-31). Ayres was deemed unessential by his crew, and his name was placed on the reduction list. (*Id.*). Following Weatherford's attempts to locate another position for Ayres in connection with his request to be transferred out of Williston, Ayres was notified of the layoff. (Appx., Volume IV, Pages 831-32). Hammons confirmed the reduction process. (Appx., Volume III, Pages 572-73). Hammons confirmed that Crabb, the Operations Manager, and the supervisors met to determine which employees should be subject to the reduction. (Appx., Volume

III, Page 572). Hammons placed Ayres on the reduction list because "he had a bad work ethic," "[h]e just wasn't fitting in," he had issues with his co-workers, and he refused to take certain assignments. (Appx., Volume III, Page 573).

### H.    Ayres' Allegation Of Retaliation.

As was found by the ALJ in the Decision, contrary to Ayres' unsupported allegations, Ayres did not make any complaints about being asked to drive outside of his CDL certification (1) to his supervisors; or (2) to HR while it was onsite for an unrelated investigation. (Appx., Volume I, Pages 109, 111-12). Ayres' only alleged complaint given credence by the ALJ encompasses Ayres' alleged telephone calls to James Nicholson in HR, which Ayres referenced in an email Ayres sent over a month after leaving Williston. (Appx., Volume I, Page 112). Outside of Ayres, no testimony was presented to support the existence of Ayres' complaint to Nicholson. Further, the testimony and evidence showed that those making the RIF decisions were unaware of any such conversations between Nicholson and Ayres. (Appx., Volume I, Pages 80-81, 88).

### I.    Other Weatherford Employees.

As to the reduction-in-force, Ayres admits that of the six Equipment Operator II's included in the reduction-in-force, at least four never raised any complaints, and at least one employee who raised complaints similar to his was

retained.[2] Specifically, Brian Gould, who worked on the same crew as Ayres, alleges he refused an assignment due to safety. (Appx., Volume II, Pages 348-49). Gould further alleges he specifically objected to Hammons and Crabb about the assignment. (Appx., Volume II, Pages 348-50). In fact, Gould testified that he was "very open" about his complaints while in Williston. (Appx., Volume II, Page 360). Gould testified that he made it clear to Crabb, Hammons, and other supervisors that he would not accept any assignments that were unsafe. (Appx., Volume II, Page 361). Gould admits that he was permitted to return to Williston in September of 2012 and on several other occasions before he voluntarily resigned from his employment in January 2013. (Appx., Volume II, Pages 359-62). Additionally, at the hearing, Ayres alleged that Pittman was asked to drive loads outside of his CDL, Pittman refused, and then contacted Weatherford's human resources department. (Appx., Volume IV, Page 669). However, it is undisputed that Pittman was not discharged. (Appx., Volume IV, Page 671).

Furthermore, there is no evidence that a single employee identified by Ayres was retained in the Equipment Operator II position but was less qualified than Ayres. (Appx., Volume IV, Page 686). Those chosen for the reduction-in-force were all deemed unessential and were among the lowest-performing of employees in the Equipment Operator II position. (Appx., Volume I, Page 123; Appx.,

---

[2] Ayres admitted these facts at his deposition in his federal lawsuit against Weatherford, discussed more fully herein. (Appx., Volume VII, Page 1260).

Volume IV, Page 848).

**J.      Ayres' Post-Employment Earnings.**

Immediately upon leaving Weatherford, Ayres found alternative employment. (Appx., Volume IV, Page 747). Ayres' first employment was with Silver Line, where his earnings totaled $6,734.25. (Appx., Volume IV, Page 749). Ayres continued to work at Silver Line in 2013, earning $16,020.26, and 2014, earning $14,898.75. (Appx., Volume IV, Page 750).

Ayres also found alternative employment at J.P. Jenks from April to September of 2013. (Appx., Volume IV, Pages 715, 741). Ayres earned $1,000 a week with J.P. Jenks, and his benefits were comparable to Weatherford's benefit package. (Appx., Volume IV, Page 748). Ayres was discharged, and he filed a lawsuit against J.P. Jenks. (Appx., Volume IV, Pages 716, 724-25, 729). Ayres filed his lawsuit against J.P. Jenks in Mahoning County, Ohio on July 2, 2014, captioned *Daniel Ayres v. J.P. Jenks, Inc.*, Case No. 14cv01631, asserting disability discrimination in violation of R.C. §§ 4112.01 *et seq*. (Appx., Volume XIV, Pages 2735-52). Ayres sued J.P. Jenks for damages after September of 2013, and was seeking lost wages as one of his remedies. (Appx., Volume IV, Page 799). Ayres voluntarily dismissed the lawsuit with prejudice June 20, 2016. (Appx., Volume XIV, Page 2752). Finally, in April of 2014, Ayres applied for and received SSDI benefits. (Appx., Volume IV, Page 742).

**K.**    **Ayres' Federal Court Lawsuit Against Weatherford.**

In addition to his Department of Labor proceedings, Ayres also filed a state court lawsuit arising out of his termination, which was removed to federal court. (Appx., Volume I, Page 135). Ayres filed his lawsuit in the Mahoning County, Ohio, Court of Common Pleas on February 14, 2013, and the matter was removed to the U.S. District Court for the Northern District of Ohio and captioned *Daniel Ayres v. Weatherford U.S., L.P.*, Case No. 4:13cv00600 (the "Litigation"). (Appx., Volume X, Pages 1766-70). Ayres' lawsuit asserted a cause of action for retaliatory discharge under both the Ohio Whistleblower Statute and the Fair Labor Standards Act based on raising workplace issues, including the alleged DOT violations and unpaid overtime. (Appx., Volume X, Pages 1766-70).

Weatherford moved for summary judgment in the Litigation, and on September 30, 2015, the District Court granted summary judgment in Weatherford's favor on all of Ayres' claims and dismissed the Litigation with prejudice. (Appx., Volume XIV, Page 2418). The District Court determined that even if Ayres could establish a *prima facie* case, he could not establish a retaliation claim because Weatherford's reduction-in-force was the result of a legitimate, non-discriminatory business reason that was not pretextual. (*Id.*). Put simply, after the reduction-in-force issue was fully litigated by the Parties in the Litigation, the District Court found, as a matter of law, that the reduction-in-force

was legitimate and that Ayres was not retaliated against because of his complaints.

## L.    **Proceedings Before The Department Of Labor.**

On or around February 15, 2013, within days of filing his complaint in the Litigation, Ayres filed a complaint with the DOL alleging Weatherford unlawfully terminated his employment in retaliation for complaining that Weatherford was violating DOT regulations. (Appx., Volume I, Page 57). After investigation, the Regional Administrator for OSHA, Region VIII, found that Ayres' claim was unsupported, and dismissed the complaint on November 6, 2014. (*Id.*). Ayres objected to the Regional Administrator's findings, and a hearing was held before Administrative Law Judge John P. Sellers, III on August 26, 2015. (*Id.*). The ALJ issued its Decision on September 25, 2017. (Appx., Volume I, Pages 188-280). The Decision was subsequently amended on October 20, 2017 to account for an issue with service, but remained substantively unchanged (the "Decision"). (Appx., Volume I, Pages 56-149).  The Decision ultimately awarded Ayres $82,119 in back pay, $10,000 for emotional harm, and $25,000 in punitive damages. (*Id*)

The Decision is largely a recitation of hearing testimony and deposition testimony.  In fact, the facts considered by the ALJ and incorporated into the Decision span over 39 pages. (*See generally*, Appx., Volume I, Pages 56-149). A large portion of the 39 pages consist of co-worker deposition testimony. (*Id.*). The ALJ heavily leans upon the statements made by these co-workers, often giving the

co-worker testimony greater weight and veracity than statements made by Weatherford's supervisors. (*Id.*). This co-worker testimony should not trump testimony by Weatherford's management.

Further and more importantly, despite ultimately finding Ayres to be uncredible on many issues, the ALJ nevertheless ruled in Ayres' favor. (*See generally*, Appx., Volume I, Pages 56-149). Specifically, the ALJ conceded that Ayres falsified documents during a prior employment to support a previously claim for retaliation against that employer. (Appx., Volume I, Pages 99-100). In fact, the ALJ stated found that

> "more so than other character evidence, [the fraud] reflects directly on [Ayres'] veracity, as it shows fraudulent behavior...Clearly, the fact that Complainant falsely date-stamped documents in a prior case in which he charged retaliatory dismissal has direct bearing on the present one, in which so much of Complainant's case depends on his own testimony."

(Appx., Volume I, Page 100).

The ALJ further confirmed that Ayres' testimony was inconsistent throughout the proceeding on key issues, including whether Ayres engaged in protected activity. (Appx., Volume I, Pages 109-11). Incredibly, despite these known and undisputed frauds and character issues, the ALJ somehow found Ayres more credible than Weatherford and credible enough to support his claims. (Appx., Volume I, Pages 56-149). The ALJ

made these findings even though Weatherford presented evidence of another employee admitting to engaging in the same types of protected activity ***and not*** suffering any type of adverse action. (Appx., Volume I, Page 132).

With respect to damages, the ALJ again ignored the magnitude of Ayres' serious frauds and misconduct, finding that, even though Ayres committed fraud on his Weatherford employment application, the ALJ was not convinced that Weatherford would "in fact" discharge Ayres for that fraud. (Appx., Volume I, Pages 133-34).

Further, the Decision ignores clear precedent requiring that the Title VII standard for retaliation claims be applied to claims pursuant to the STAA. (*See generally*, Appx., Volume I, Pages 56-149). In ignoring this standard, the ALJ applied an improper standard and erroneously concluded that Ayres was subjected to retaliation. (*Id.*). The standard used by the ALJ presumes that Ayres engaged in protected activity. (Appx., Volume I, Page 98). Regardless of the standard used, the ALJ's Decision is not supported by the substantial evidence within the record. Finally, the ALJ erroneously concluded that collateral estoppel did not preclude Ayres' claims. (Appx., Volume I, Page 135). The Decision is

inconsistent with the substantial evidence in the record and legally flawed.

Following the Decision, Ayres moved for attorney's fees with respect to the Decision. (Appx., Volume I, Pages 150-155).

Weatherford filed a timely Petition for Review with the Department of Labor's Administrative Review Board (the "ARB") on November 3, 2017, seeking to reverse the Decision in its entirety. (Appx., Volume XIV, Page 2808). The Petition for Review related to the merits of the Decision bore the case number ARB NO. 2018-0006. (*Id.*).

On August 22, 2018 the ALJ issued its Attorney Fee Order, granting Ayres requested attorneys' fees in the amount of $33,740 and costs in the amount of $2,479.01. (Appx., Volume I, Page 22). Weatherford filed a timely Petition for Review with the ABR addressing the attorneys' fees award on November 5, 2018. (Appx., Volume XIII, Page 2358). The Petition for Review related to the ALJ's award of attorneys' fees bore the case number ARB No. 2018-0074. (*Id.*). Both Petitions for Review were consolidated.

On November 18, 2020, the ABR issued its Decision and Order (the "ARB Decision"). (Appx., Volume XIII, Page 2079-2092).[3] Despite the ALJ issuing a nearly 100-page decision, the ARB Decision is a mere 14 pages. (*Id.*). The ARB

---

[3] Due to consolidation, the ARB issued one decision applicable to both petitions for review.

Decision affirmed the Decision issued by the ALJ, including the ALJ's award of attorneys' fees and costs. (*Id.*). In doing so, the ARB adopted the legally and factually flawed findings of the ALJ in his Decision. (*Id.*). The ARB Decision fails to address Ayres' credibility, despite the ALJ dedicating many pages to this serious topic. (*Id.*). Rather, the ARB Decision ignores credibility issues and, instead, focuses on finding that Weatherford employees had sufficient animus to support Ayres' claims. (Appx., Volume XIII, Pages 2085-86). In a similar fashion to the ALJ, the ARB does not discuss the key legal issue of collateral estoppel at length. (Appx., Volume XIII, Pages 2087-88). Rather, the ARB summarily adopts the ALJ's findings without citing ay authorities for the position. (*Id.*).

Much like the Decision the ARB Decision is inconsistent with the substantial evidence within the record.

However, the ARB properly reversed the ALJ's award of punitive damages, holding that "penal claims, including the right to recover punitive damages, abate upon the death of the injured party."[4] (Appx., Volume XIII, Page 2089). Weatherford timely filed a Petition for Review the ARB Decision to this Court on December 31, 2020. (Appx., Volume XIV, Page 2851).

Ayres moved for attorneys' fees related to fees and costs incurred in the ARB proceeding. (Appx., Volume XIV, Page 2856). On January 22, 2021, the

---

[4] Ayres passed away during the ALJ proceeding and prior to the Decision, which awarded punitive damages.

ARB issued its Order Awarding Attorney's Fees, and granted Ayres attorney's fees in the amount of $12,670.00. (Appx., Volume XIII, Page 1991). Weatherford timely appealed the Order Awarding Attorney's Fees and Costs to this Court on March 24, 2021. (Appx., Volume XIV, Page 2862).

## IV.    **SUMMARY OF THE ARGUMENT**

This case arises out of Weatherford's Williston, North Dakota operations. It is undisputed that Weatherford hired many employees in hopes of high customer demand. However, the demand was far less than expected, and many employees were laid off in in late 2012.

Ayres was one of those many Weatherford employees laid off. Ayres alleges that he was selected for the layoff due to various complaints. However, Ayres admits that many individuals were discharged as part of the reduction-in-force, including several who never complained. Moreover, at least two employees who complained were not discharged as part of the reduction. Finally, the record demonstrates that Ayres informed management that he did not want to return to Williston.

Despite not wanting to return to Williston, Ayres filed a DOL charge and a federal court lawsuit. Both matters addressed one key issue – was Ayres discharged due to the reduction-in-force or due to his alleged complaints. The federal court issued a decision first, finding Ayres' discharge was lawful. Despite

delaying the hearing to permit the federal court to issue its decision, the ALJ disregarded the federal court decision and found in favor of Ayres. The ARB has since adopted the ALJ's erroneous conclusions. The ALJ and the ARB ignored the undisputed evidence within the record, applied the incorrect legal standard, and ignored the issue of collateral estoppel.

As set forth below, the Decision is factually and legally flawed, inconsistent with the substantial evidence within the record, and should be reversed in its entirety.

## V.   ARGUMENT

### A.   Standard Of Review.

The Sixth Circuit Court of Appeals applies a substantial evidence standard to non-legal conclusions of the Secretary of Labor and reviews the legal conclusions of the board de novo. *See Roadway Express, Inc. v. Admin Review Bd.*, 116 Fed. Appx. 674, 678 (6th Cir. 2004). The Decision is flawed both legally and factually. In addition, the Decision is arbitrary, capricious, and/or the Department of Labor abused their discretion in affirming the Administrative Law Judge's decision by finding that Appellee has satisfied his claim for Whistleblower Retaliation. The undisputed evidence presented supports only one conclusion – that Appellees' protected activity had no relation to Weatherford's decision to include Appellee in a legitimate reduction in force.

**B.**     **Res Judicata And Collateral Estoppel Should Be Applied To Bar Ayres' Claim.**

De Novo review should be applied to Ayres' claims because the ALJ and the ARB failed to address collateral estoppel and res judicata, which was a clear abuse of discretion.

Ayres made the voluntary decision to prosecute his claims in two forums. The federal district court issued its decision first; granting Weatherford's motion for summary judgment.  Ayres did not appeal the federal court's adverse decision, but rather decided to pursue his appeal through the Department of Labor.

Importantly, in the federal district court case, Ayres asserted a claim for retaliation under Ohio's Whistleblower statute, O.R.C. § 4113.52, which provides employees with a mechanism to initiate a lawsuit concerning alleged unlawful working conditions so long as the employee complies with the statute's reporting requirements.  Ayres' STAA claim arises out of his discharge and his complaint concerning Weatherford requesting that Ayres perform unlawful work outside of his CDL certification.  Importantly, Ayres' could have brought both of these claims in his state court lawsuit as alleged violations of Ohio's Whistleblower Statute, but chose not to do so.

As set forth below, the ARB and the ALJ failed to properly apply res judicata and collateral estoppel to Ayres' claims.  Both legal and factual issues

are addressed below.

### 1.    Res judicata.

"Res judicata simply means that a litigant generally does not get two bites at the apple." *Talismanic Props., LLC v. City of Tipp City*, 742 Fed. Appx. 129, 131 (6th Cir. 2018). In other words, "[i]f a court has reached final judgment on a party's claim, then a later court cannot hear that same claim or claims the party could have brought." *Id.*

Under Ohio law, the doctrine of res judicata comprises four elements: (1) a prior suit litigated to a final, valid decision on the merits; (2) the same parties as in the prior suit, or their privies; (3) a second suit that raises claims that "were or could have been litigated" in the prior suit; and (4) claims in the second suit that "aris[e] out of the transaction or occurrence that was the subject matter" of the prior suit. Ohio ex rel. Boggs v. City of Cleveland, 655 F.3d 516, 520 (6th Cir. 2011) (*quoting Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)).

Ohio has "'adopted an expansive view of claim preclusion.'" *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 869 (6th Cir. 2021) (*citing Holzemer v. Urbanski*, 86 Ohio St. 3d 129, 1999-Ohio 91, 712 N.E.2d 713, 716 (Ohio 1999)). Under Ohio law, "'a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the

transaction or occurrence that was the subject matter of the previous action.'" *Id.* (*citing Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 1995- Ohio 331, 653 N.E.2d 226, 229 (Ohio 1995)); *see also Restatement (Second) of Judgments* § 24. In other words, "'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.'" *Id.* (*citing Grava*, 653 N.E.2d at 229 (*quoting Nat'l Amusements, Inc. v. City of Springdale*, 53 Ohio St. 3d 60, 558 N.E.2d 1178, 1180 (Ohio 1990))). Accordingly, "a plaintiff must present every ground for relief in his first action, or res judicata will bar him from later asserting it." *Id.*

In this matter, all of the elements of res judicata are firmly established by Weatherford. Initially, "literal privity is not a requirement for res judicata to apply. Instead a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). In this case, Ayres aggressively litigated his claims in two forums. He should not be permitted to choose two forums and then adopt the result of the two forums that met with his approval.

Moreover, Plaintiff could have asserted the STAA claim in the federal court action. *Oliveri v. U.S. Food Serv.*, No. 3:09cv921, 2010 U.S. Dist. LEXIS 11199 *7 (M.D.Pa. Feb. 9, 2010) (The district court denied a motion to dismiss

"[c]ount one of plaintiff's complaint [that asserts a cause of action for violation of STAA"). Ohio has long recognized a public policy claim. *Greeley v. Miami Valley Maint. Constrs., Inc.* 49 Ohio St.3d 228 (1990). In addition, STAA does not preempt Ayres' state law claim for retaliatory discharge based on his refusal to drive unsafe vehicles. 49 U.S.C. § 31105(f) ("Nothing in this section preempts or diminishes any other safeguards ... provided by Federal or State law"); *Conley v. Yellow Freight Sys.*, 521 F. Supp. 2d 713, 725 (E.D.Tn. 2007) ("After reviewing the cases from other states and Circuits, this court concludes that those cases that hold that the STAA does not pre-empt state law offer the correct interpretation of the STAA due to their focus on congressional intent"). Accordingly, based on the undisputed facts of this matter, res judicata bars Ayres' claim and the ARB decision should be reversed. *Budri v. FirstFleet Inc.*, Civil Action No. 3:19-CV-0409-N-BH, 2019 U.S. Dist. LEXIS 188251 **15-18 (N.D.Tx. Sept. 20, 2019) (STAA claim that was litigated to finality before an ALJ could not be relitigated in federal court).

### 2.    Collateral estoppel.

There are four requirements for the application of collateral estoppel: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must

have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007); *see also Germann v. Dep't of Labor*, 206 F. App'x 662, 666 (9th Cir. 2006) (summary judgment on state court wrongful termination claim precluded claim of retaliation under the STAA).

Important to this appeal, the collateral estoppel doctrine bars not only claims that were actually brought in a previous lawsuit, but also claims that could have been brought in the prior suit. *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340, 347 (3rd Cir. 2010). The doctrine requires a plaintiff to present all claims arising out of the same occurrence in a single suit is designed to "avoid piecemeal litigation and conserve judicial resources." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010). Based on these principles, claim preclusion exists to "protect litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[es] judicial economy by preventing needless litigation." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3rd Cir. 2007) (citation omitted); *see Gage v. Warren Tp. Committee & Planning Bd. Members*, 463 Fed. Appx. 68, 72 (3rd Cir. 2012) ("The doctrine of claim preclusion is central to the purpose for which civil courts have been

established, the conclusive resolution of disputes, and seeks to avoid the expense and vexation of multiple lawsuits, while conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions.").

Ayres' Litigation involved identical issues necessary to the outcome of the matter and resulted in a final judgment on the merits following Ayres' full opportunity to litigate the issues. In both cases, Ayres alleged retaliatory discharge for raising verbal complaints and a single email complaint on September 20, 2012, which listed the alleged DOT violations and FLSA violations. (Appx., Volume III, Pages 496-500, 501-504). The same alleged complaints were at issue in both cases. (*Id.*). In both cases, Weatherford argued that it dismissed Ayres as part of a necessary reduction-in-force – not because of any of Ayres' workplace complaints. (Appx., Volume II, Pages 281-313; Appx., Volume III, Pages 505-517). Indeed, Ayres' request for attorneys' fees for both the Litigation and the DOL proceeding evidences the fact that the Litigation and the DOL complaint involve identical facts and substantially similar legal issues. (Appx., Volume I, Pages 150-188). In fact, more than half of the fees Ayres sought for the DOL proceedings relate to the Litigation. (*Id.*). Further, the invoices submitted in support of the fees sought by Ayres show that much of the work and preparation conducted by Ayres' attorney was simultaneously

performed to advance both the Litigation and the DOL complaint. (*Id.*).

The District Court determined that even if Ayres could establish a *prima facie* case, he could not establish a retaliation claim because Weatherford's reduction-in-force was valid, and the reduction-in-force was the result of a legitimate, non-discriminatory business reason that was not pretextual. (Appx., Volume III, Pages 505-517). The District Court's findings further support that Weatherford demonstrated by clear and convincing evidence that it would have taken the same adverse action (including Ayres in the RIF) in the absence of Ayres' alleged complaints. (*Id.*). The District Court found that: (1) there was a significant downturn with Weatherford's expected contract work in 2012; (2) due to the lack of work, Ayres spent the majority of his time performing other functions instead of operating DOT regulated vehicles; (3) the Williston operation was instructed to cut costs; (4) Ayres was deemed non-essential to the operation; (5) a total of sixteen employees, including Ayres, were let go in the reduction-in-force; (6) Ayres admits that at least six of his co-workers were laid off as part of the reduction-in-force; (7) Ayres also admits that at least four of those six co-workers didn't make complaints prior to the reduction-in-force; and (8) the one employee Ayres is aware of who complained was not included in the reduction-in-force. (*Id.*).

The ARB had authority to dismiss Ayres claims pursuant to collateral

estoppel. For example, in *Germann v. Dep't of Labor*, 206 F. App'x. 662, 664 (9th Cir. 2006), the Ninth Circuit affirmed the ARB's dismissal of the complainant's OSHA complaint, which alleged that he was terminated in retaliation for raising complaints, on the basis of issue preclusion. *Id.* at 664-666. In *Germann*, the complainant additionally filed a lawsuit in state court alleging wrongful termination. *Id.* at 663-664. It was determined in the state court proceeding that the complainant was <u>not</u> terminated for raising any complaints. *Id.* at 664-665. The Ninth Circuit determined that collateral estoppel was appropriate as the same question of fact—whether the complainant was terminated for his complaints—was involved in the litigation and the administrative proceeding. *Id.* at 665. In so holding, the Ninth Circuit rejected the complainant's argument that the DOT should not defer to court proceedings, as there was absolutely no evidence that the litigation was anything but "fair, regular, and free of procedural infirmities" and that there was no indication that the outcome of the litigation "was repugnant to the purposes of the STAA." *Id.* at 666.

Like *Germann*, the Parties have thoroughly litigated the issue of Ayres' termination as part of the reduction-in-force, and the District Court for the Northern District of Ohio has accepted that the reduction-in-force was valid and rejected Ayres' retaliation claims. Accordingly, Ayres should not have been

allowed to re-litigate this issue and reach a decision contrary to that issued by the District Court. The ALJ's and the ARB's decision is contrary to the substantial evidence, an abuse of discretion, and fails to adhere to the doctrine of collateral estoppel. Thus, the ARB Decision should be reversed.

**C.    The ALJ And ARB Used The Wrong Standard Of Review For Discrimination Claims Under The STAA.**

The ALJ and ARB abused their discretion in failing to apply the appropriate standard applicable to STAA retaliation claims. Accordingly, de novo review of the Ayres' claim is appropriate.

Courts, including the Sixth Circuit, have long-held that the standard applicable to claims brought under the STAA is the same standard used to analyze claims brought under Title VII. *See Yellow Freight Sys. v. Reich*, 27 F.3d 1133, 1138 (6th Cir. 1994); *Melton v. United States DOL*, 373 Fed. Appx. 572, 576-77 (6th Cir. 2010); *Ridgley v. United States DOL*, 298 F. App'x 447, 452 (6th Cir. 2008); *R&B Transp., LLC v. United States Department of Labor*, 618 F.3d 37, 46 (1st Cir. 2010); *Bettner v. Admin Review Bd.*, 539 F.3d 613 (7th Cir. 2008); *Calmat Co. v. United States DOL*, 364 F.3d 1117, 1122 (9th Cir. 2004); *Calhoun v. United States DOL*, 576 F.3d 201, 214 (4th Cir. 2009). As set forth more fully below, this test requires that Ayres prove that his protected activity was the "but for" cause for his discharge. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, (2013).

While 49 U.S.C.S. § 31105 was amended in 2007 to include the analysis contained in 49 U.S.C.S. § 42121, federal courts have maintained consistent application of the McDonnell-Douglas framework in analyzing claims under the STAA. Indeed, these courts still apply the McDonnell-Douglas standard to STAA claims involving conduct post 2007. *See Marinkovic v. Vasquez*, No. GLR-14-3069, 2015 U.S. Dist. LEXIS 77463, *18-20 (Dist. Md. June 16, 2015) (dismissing claimant's STAA claim for refusal to drive in connection with a 2014 complaint due to claimant's failure to satisfy the prima facie case used in Title VII claims); *Lopez v. Star Tex Gasoline & Oil Dist.*, No. 2:14-CV-52, 2015 U.S. Dist. LEXIS 188916, *9-14 (S.D. Tex. June 3, 2015) (same); *Stark v. Hartt Transp. Sys.*, 37 F. Supp. 3d 445, 481, 486 (Dist. Me. 2014) (same); *Irizarry v. Lily Transp. Corp.*, No. 3:15cv1386, 2017 U.S. Dist. LEXIS 111158, *9-10, 18 (Dist. Conn. July 18, 2017) (same).

However, the ALJ and the ARB failed to apply this standard and, instead, applied a more stringent standard not used by the Sixth Circuit or other circuit courts. Specifically, the ALJ required Ayres to satisfy the following test: (1) whether an employee's protected activity played a role, any role, in the adverse action; and (2) whether the employer can show by clear and convincing evidence that it was highly probable it would have taken the same action regardless of the complainant's protected activity. (Appx., Volume I, Pages 97-98). By the ALJ's

own admission, this test presumes that Ayres engaged in protected activity. (Appx., Volume I, Page 98). In doing so, the ALJ erroneously softened the burden required of Ayres to satisfy his prima facie case, while at the same time forcing Respondent to satisfy a more stringent burden. (*Id.*). The ARB upheld the ALJ's decision and, therefore, condoned the application of the improper test. (Appx., Volume XIII, Pages 2079-2092).

The ALJ's and ARB's failure to apply to proper legal standard was a clear abuse of discretion and, therefore, the ARB's Decision should be reversed.

### D. Under Either Standard, Ayres' Termination Was Pursuant To A Non-Discriminatory Reduction-in-Force and His Claim Fails on the Merits.

As stated previously herein, the ALJ and ARB applied the wrong standard in ruling upon Ayres' claim. Accordingly, de novo review is appropriate. Further, both the ALJ's Decision and the ARB Decision are inconsistent with the substantial evidence in the record. Regardless, Ayres' claim fails as a matter of law because Ayres cannot satisfy his prima facie requirements under either standard.

#### 1. Ayres' Cannot Satisfy the Appropriate Standard for His STAA Claim - the McDonnell Douglas Standard.

To satisfy his claim under the STAA, Ayres must establish that (1) he engaged in a protected activity under the STAA; (2) Weatherford knew of the protected activity; (3) Ayres suffered an adverse action; and (4) a causal

connection between the protected activity and the adverse action. *See Melton v. United States DOL*, 373 F. App'x 572, 577 (6th Cir. 2010). In 2013, the United States Supreme Court addressed the causation standard for retaliation claims brought pursuant to Title VII, holding that the causation standard is more stringent for such claims. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). To succeed on a Title VII retaliation claim, a plaintiff must show that the defendant would not have taken the adverse action but for the protected activity. *Id.* "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Further, because this case involves a reduction-in-force, the fourth element of the prima facie case is modified, requiring Ayres to "provide additional, direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *See Coleman v. Cardinal Health 200, LLC*, No. 12-11154, 2013 U.S. Dist. LEXIS 159473, *38 (E.D. Mich. Nov. 7, 2013) (quoting *Rachells v. Cingular Wireless Employee Sys., LLC*, 732 F.3d 652 (6th Cir. 2013)). If Ayres is able to satisfy his prima facie case, the burden then shifts to Weatherford to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Once Weatherford satisfies its burden, Ayres must then show that Weatherford's

legitimate reason was pretext for discrimination. *Id.*

### a.    Ayres Cannot Satisfy His Prima Facie Case Under the McDonnell Douglas Standard.

Ayres cannot satisfy the first, second, or fourth elements of his prima facie case. As to the first element of his prima facie case, Ayres failed to engage in any protected activity under the STAA. Section 31105 of the STAA prohibits an employer from discharging any employee because the employee has undertaken protected activity by: (1) filing a complaint relating to the violation of a commercial motor vehicle safety regulation; or (2) refusing to operate a motor vehicle when the operation would violate the provisions of the STAA. 49 U.S.C. § 31105(a)(A)-(B).

Importantly, the evidence establishes that Ayres was never asked to operate any vehicle in violation of DOT regulations or in any unsafe manner. Specifically, Ayres is unable to recall the dates or details surrounding the alleged requests, other than identifying three supervisors. (Appx., Volume IV, Pages 765-66, 769). However, the post hearing depositions provide no support for Ayres' allegations and prove that he was never asked to operate outside of his CDL. Specifically, three co-workers and one supervisor testified that they never witnessed Ayres being asked to operate outside of his CDL, nor were the witnesses aware of any workplace issues involving Ayres. (Appx., Volume II, Pages 368-69, 395-397, 416, 438-39). One supervisor, Hammons, recalls asking

Ayres if he could complete one particular assignment, but immediately reassigned the job upon learning that Ayres' CDL did not permit the assignment in question. (Appx., Volume III, Pages 568-570). Accordingly, the evidence introduced at the hearing and the post-hearing depositions demonstrates that no supervisor asked Ayres to violate DOT regulations by driving equipment outside of his CDL. To the contrary, the evidence shows that on one occasion, Ayres' supervisor reassigned a task to another Equipment Operator when he learned that Ayres' CDL did not permit Ayres to perform the task to avoid committing any DOT violations.

As to the filing of any complaints, it is undisputed that Ayres did not file any written complaints until he sent an email to Respondent on September 20, 2012 concerning a variety of issues, one of which was the allegation that workers were allegedly asked to drive outside of their CDL certification. (Appx., Volume IV, Page 765). Importantly, the email failed to address any alleged violation as to Ayres but was instead a general remark concerning other employees. (Appx., Volume I, Pages 112-13). Courts have held that with regard to internal complaints, the "communication to the employer must be sufficient to give notice that a complaint is being filed." *See e.g. Clean Harbors Environ. Servs., Inc. v. Herman*, 146 F.3d 12, 29 (1st Cir. 1998). Courts have recognized that "there is a point at which an employee's concerns and comments are too

generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the STAA." *Id.* at 29-30. Ayres' vague email did not provide sufficient detail to Respondent to constitute a "complaint" under the STAA. The evidence establishes that Ayres failed to file any complaint other than the September 20, 2012 email. Accordingly, Ayres' claim fails because he did not engage in any protected activity.

Assuming, *arguendo*, that Ayres did engage in a protected activity, Respondent was unaware of any alleged protected activity prior to its decision to place him on the non-essential reduction-in-force list. The evidence established that Ayres never made any complaints to Respondent concerning any alleged violations covered by the STAA until his September 20, 2012 email. (Appx., Volume I, Pages 109, 111-12; Appx., Volume IV, Page 765). This email came *after* Respondent selected Ayres for the reduction-in-force and cannot serve as the basis for a claim of retaliation. (*Id.*). *See Fenton v. HiSan, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999) (plaintiff unable to establish that employer knew of protected activity where the decision-makers were unaware of plaintiff's protected activity); *see also Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002) (same).

Finally, Ayres cannot satisfy the fourth element of his prima facie case because he cannot establish a causal connection between any alleged protected

activity and the decision to include him in the reduction-in-force. First, Ayres cannot show any causal connection because the decision to include him in the reduction-in-force was made prior to his September 20, 2012 complaint. *See Clark County Sch. Dist. v. Breeded*, 532 U.S. 268, 273 (2001) ("[e]mployers need not suspend previously planned [employment decisions] upon discovering [a protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Accordingly, there is no causal connection between the decision or his eventual termination and his September 20, 2012 complaint. Moreover, numerous employees who have complained to Respondent were not subject to any retaliatory actions. Indeed, Gould, who was not selected for the reduction-in-force and was called back to work at Williston, made numerous complaints to Respondent and refused multiple assignments. (Appx., Volume II, Pages 348-50, 360-61). However, the ALJ and ARB erroneously disregarded these facts in favor of Gould's testimony.

Lastly, because Ayres' assignment in Williston was limited to only six weeks, any argument as to temporal proximity is meaningless and irrelevant, as any complaint would necessarily be close to the reduction-in-force. *See Brown-Baumbach v. B&B Auto, Inc.*, No. 09-3962, 2010 U.S. Dist. LEXIS 67472, *49-50 (E.D. Pa. July 6, 2010) (*aff'd*, in part *Brown-Baumbach v. B&B Auto, Inc.*,

437 F. App'x 129 (3d Cir. 2011) (temporal proximity was rendered essentially meaningless due to plaintiff's short period of employment). Accordingly, because Ayres cannot establish a causal connection between his alleged protected activity and the decision to eliminate his position, he cannot satisfy his prima facie case. The ALJ's Decision and the ARB Decision are inconsistent with the substantial evidence in the record and an abuse of discretion. Thus, the ARB's Decision should be reversed.

### b.    Ayres Cannot Prove Pretext.

Even if Ayres was able to establish his prima facie case, Respondent's decision to include him in the reduction-in-force was legitimate and non-discriminatory, and Ayres cannot establish pretext. *See Mitchell v. Detroit Med. Ctr.*, No. 99-1402, 2000 U.S. App. LEXIS 15941, *6 (6th Cir. July 3, 2000) ("[a] reduction in force…constitutes a legitimate business reason for the occurrence of an adverse employment action."); *see also Beck v. Buckeye Pipeline Servs. Co.*, 502 Fed. Appx. 447, 449 (6th Cir. 2012).

It is undisputed that business was below expectations at the Williston branch. During the hearing, Ayres admitted "[t]o be honest, there was hardly any fracking for Weatherford…[t]here were nobody out working on the crews…[Equipment Operators] were sitting there." (Appx., Volume IV, Pages 763, 767). It is undisputed that, due to a lack of work, the Williston fracking

operations reduced the workforce in late 2012. As part of the reduction-in-force, six Equipment Operators, including Ayres, were determined to be "unessential" and were selected for the reduction-in-force. (Appx., Volume I, Page; 123; Appx., Volume III, Page 492; Appx., Volume IV, Page 848). Ayres was chosen for the reduction-in-force based solely upon his performance issues, which consisted of Ayres' poor work ethic, issues with co-workers, and refusal to take certain assignments due to the general lack of work for Equipment Operators. (Appx., Volume III, Page 573). After Ayres was chosen for the reduction-in-force, Respondent attempted to find Ayres another position but was unable to do so. (Appx., Volume I, Pages 236-237). Incredibly, the ALJ disregarded Respondent's reasons for including Ayres in the reduction-in-force without having any evidence that Respondent retained a single employee that performed worse than Ayres. Contrary to the ALJ's Decision, "[courts] will not reevaluate business decisions made in good faith … [i]t is enough the decision was genuinely and honestly made in an attempt to select the employees retained on the basis of performance related considerations." *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1285 (7th Cir. 1987).

As to pretext, several of the employees who retained their positions had previously filed complaints with Respondent, including Gould, who was not included in the reduction-in-force. (Appx., Volume I, Pages 348-50, 360-61).

Indeed, the post-hearing depositions prove that the filing of complaints or the refusal to perform assignments in violation of regulations were not actions Respondent discouraged or for which it retaliated. Moreover, even if Ayres was not included in the reduction-in-force, he had requested to be transferred out of the Williston branch. (Appx., Volume I, Page 63). Accordingly, because Ayres' position was eliminated as part of a legitimate, non-discriminatory reduction-in-force, and because Ayres cannot establish pretext, his claim fails as a matter of law. Thus, because the ALJ's Decision and the ARB Decision are inconsistent with the substantial evidence and an abuse of discretion, the ARB Decision should be reversed.

### 2. Ayres Cannot Satisfy The Standard Applied by the ALJ and ARB.

As set forth above, de novo review is appropriate on this issue due to the ALJ's and ARB's failure to apply the appropriate legal standard. However, even under the standard set forth in *Palmer v. Canadian Nation Railway, Illinois Central Railroad Company*, ARB Case. No. 2014-FRS-154 and applied by the ALJ, Ayres' claims fail as a matter of law.

### a. Ayres Cannot Satisfy His Prima Facie Case Under *Palmer*.

The prima facie case under the standard set forth in the Decision and affirmed in the ARB Decision requires Ayres to show the employee's protected activity played a role, any role, in the adverse action. As part of this burden,

Ayres must show (1) whether he engaged in any protected activity; (2) whether Respondent knew of his protected activity; and (3) whether the protected activity played a role in his termination. (Appx., Volume I, Pages 49, 58, 62).

Ayres cannot satisfy any element of his prima facie case. As to the first element, Ayres never engaged in any protected activity – Ayres never refused to operate a motor vehicle in violation of any regulation during his employment in Williston, nor did he file any complaints concerning any of his alleged activity protected under STAA. Thus, Ayres cannot satisfy this element.

Ayres cannot satisfy the second element because Respondent was not aware of Ayres' alleged protected activity until after it made the decision to include Ayres in its reduction-in-force. *See Fenton v. HiSan, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999) (plaintiff unable to establish that employer knew of protected activity where the decision-makers were unaware of plaintiff's protected activity); *see also Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002) (same). Thus, Ayres cannot satisfy the second element.

Finally, Ayres cannot satisfy the third element because Ayres was selected for the reduction-in-force solely based upon his performance issues. As stated previously herein, Ayres had a poor work ethic, issues with his co-workers, and refused to help with certain assignments when work was not otherwise available for Equipment Operators. (Appx., Volume I, Pages 573). Despite

this, the ALJ and ARB erroneously discredited Respondent's stated reason without having any evidence that Respondent chose to keep a worse-performing employee over Ayres. Simply put, Ayres alleged protected activity played no role in Respondent's decision.

As to any animus, the evidence establishes that Respondent does not retaliate or take adverse action against employees who refuse to operate a vehicle or who file complaints. In fact, and as set forth previously herein, several employees who have either complained of alleged violations or refused to operate a vehicle in violation of regulations retained their positions and/or were not subjected to any adverse action. (Appx., Volume I, Pages 348-50, 360-61).

Further, as set forth previously, temporal proximity is meaningless in this case due to Ayres' short, six-week employment in Williston. *See Brown-Baumbach*, 2010 U.S. Dist. LEXIS 67472 at *49-50. Accordingly, the ALJ's and ARB's decision to give any weight to temporal proximity was erroneous, inconsistent with the substantial evidence in the record, an abuse of discretion, and appropriate for reversal.

        **b.**    **Respondent Would Have Eliminated Ayres' Position as Part of the Reduction-In-Force, Regardless of Ayres' Alleged Protected Activity.**

Even if Ayres is able to show that his alleged protected activity played a role in Respondent's decision to eliminate his position—which he cannot do—

Respondent would have made the decision to eliminate his position nonetheless.

As set forth previously, it is undisputed that business was below expectations at the Williston branch, which resulted in the reduction in force. (Appx., Volume IV, Pages 763, 827-828). Ayres was chosen for the reduction-in-force based solely upon his performance issues. (Appx., Volume I, Page 573).

As to the employees that were not included in the reduction-in- force, each employee performed substantially better than Ayres. No evidence was presented to dispute this truth, and the ALJ's decision to discredit Respondent's reason for including Ayres in the reduction-in-force was error and inconsistent with legal precedent precluding court's from reevaluating business decisions made in good faith. *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1285 (7th Cir. 1987).

Furthermore and as set forth previously, even if Ayres was not included in the reduction-in-force, he nonetheless would not have returned to Williston nor would he have been placed into another position due to no other position being available. (Appx., Volume I, Pages 236-237). Accordingly, Respondent would have made the same decision regardless of Ayres' alleged protected activity.

### E.  Damages Awarded Are Not Supported By The Substantial Evidence And Their Award Was An Abuse Of Discretion.

#### 1.  The ARB Properly Reversed The ALJ's Award Of Punitive Damages.

As an initial matter and of which is the subject of Ayres' appeal, the ARB properly reversed the ALJ's award of punitive damages.  Ayres' estate is precluded from seeking an award of punitive damages because punitive damages do not survive a plaintiff's death. *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("[i]t is well-established that remedial actions survive the death of the plaintiff, while penal actions do not.").

#### 2.  Ayres' Damages Are Limited By The After-Acquired Evidence of Ayres' Fraudulent Statements to Respondent.

If judgment for Ayres is upheld, then any award of damages to Ayres should be cut off by the after-acquired evidence doctrine. Ayres submitted a signed employment application to Respondent on April 25, 2012 that was fraudulent in several material areas. (Appx., Volume I, Pages 135-36). Specifically, Ayres stated that he voluntarily left his previous employment with Baker Hughes. (*Id.*). To the contrary, during the J.P. Jenks lawsuit, Respondent learned that Baker Hughes discharged Ayres. (*Id.*).

Similarly, Ayres stated in his application that his reason for leaving Homeland Security was because his job was "finished." (Appx., Volume I, Pages 44-46; Appx., Volume IV, Pages 727-28). At Ayres' deposition, Ayres

explained that "finished" meant he left Homeland Security due to his wife's pregnancy. (Appx., Volume IV, Pages 727-28). However, at the hearing, it was determined that the real reason Ayres left Homeland Security was due to the fact that he was discharged for conduct unbecoming of a federal air marshal. (Appx., Volume IV, Pages 727, 732).

In *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995), the Supreme Court established the after-acquired evidence defense. *Id.* at 362. "If the defense applies, it generally bars the employee from obtaining front pay and reinstatement, and limits back pay." *Southworth v. Northern Trust Secs.*, 2013-Ohio-2917, ¶ 13 (Ohio Ct. App., Cuyahoga County July 3, 2013) (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996)). The defense is applicable "[w]here an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited." *Thurman*, 90 F.3d at 1168; *see also McKennon*, 513 U.S. at 362.

It is undisputed that Respondent's policies prohibit the falsification of company documents, including employment-related documents. (Appx., Volume IV, Page 868). A false work history is grounds for discharge under Respondent's policies and Respondent would have discharged Ayres immediately upon becoming aware of the fraudulent statements. (Appx.,

Volume IV, Page 869). Thus, any damages award should be cut-off on the date of his deposition in the J.P. Jenks litigation on October 27, 2014, as Respondent first learned of Ayres' false employment application during the J.P. Jenks litigation. The ALJ's and ARB's failure to apply the after-acquired evidence doctrine to limit Ayres' damages was inconsistent with the substantial evidence and an abuse of discretion. Thus, reversal is appropriate.

**3.    Ayres' Damages Should Be Tolled As Of September 2013, And Cut Off As Of April 2014 Due To Ayres' Disability And Failure To Mitigate His Damages.**

The duty to mitigate includes the obligation to make reasonable and good-faith efforts to maintain the new employment. *See e.g. Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 936 (5th Cir. 1996), *cert. denied,* 117 S.Ct. 767 (1997). If an employee, however, suffers a "willful loss of earnings" and is terminated from the new employment, the employer's backpay liability is tolled. *See Thurman*, 90 F.3d at 1168-1169; *N.L.R.B. v. Ryder System Inc.*, 983 F.2d 705, 712 (6th Cir. 1993); *Brady v. Thurston Motor Lines, Inc,*. 753 F.2d 1269 (4th Cir. 1985).

Ayres obtained alternative employment immediately upon leaving Respondent. First with Silver Line, where he worked from 2012 to 2014. (Appx., Volume IV, Page 749). Ayres also obtained employment with J.P. Jenks from April 2013 to September 2013, when he was discharged for failing to wear the

proper uniform while on duty. (Appx., Volume IV, Pages 715, 741-42). Accordingly, Respondent's backpay liability, if any, should be tolled as of September 2013. *See e.g. Patterson*, 90 F.3d at 936 (plaintiff breached duty to mitigate by engaging in actions to cause termination); *Dreiger v. Mid-American Club*, No. 95C4490, 1998 U.S. Dist. LEXIS 2536 (N.D. Ill. Mar. 5, 1998) (excluding from backpay award amount plaintiff would have earned if not fired for own misconduct).

Finally, Ayres applied for, and received SSDI benefits beginning in April 2014. (Appx., Volume IV, Page 742). Ayres' affirmation that he was disabled as of April 214 should serve to cut off damages. The ALJ's and ARB's failure to find mitigation appropriate in determining damages was inconsistent with the substantial evidence and an abuse of discretion. Accordingly, reversal is appropriate.

**4.      Ayres' Damages Are Limited By His Post-Employment Earnings.**

Ayres earned $30,441.82 during his employment with Respondent between April 23 2012 and October 19, 2012 ($1,217.67 week by 25 weeks). (Appx., Volume I, Page 137). As indicated herein, Ayres obtained alternative employment immediately upon leaving Respondent. (Appx., Volume IV, Page 749). Ayres made $6,734.25 with Silver Line in 2012, $16,020.36 in 2013, and $14,898.75 in 2014. (Appx., Volume IV, Pages 749-50).

Additionally, Ayres found alternative employment with J.P. Jenks from April 2013 to September 2013. (Appx., Volume IV, Pages 715, 741-42). During his employment with J.P. Jenks, Ayres made $1,000 per week, and received a benefits package similar to what he received while working for Respondent. (*Id.*). Finally, in April 2014, Ayres applied for and received SSDI benefits due to his cancer diagnosis. (Appx., Volume IV, Page 742).

Accordingly, Ayres' lost wages for 2012 total **<u>$5,442.45</u>**. (Weatherford's wages from October 19, 2012 – December 31, 2012 = $12,176.70 *MINUS* $6,734.25 earned at Silver Line). Ayres' lost wages for 2013 total **<u>$21,298.58</u>**. (Weatherford's wages $63,318.84 *MINUS* $16,020.26 earned at Silver Line *MINUS* $26,000 earned at J.P. Jenks). However, if Ayres' damages are properly cut off in September of 2013 when Ayres was terminated from J.P. Jenks, then his lost wages for 2013 would total **<u>$8,564.35</u>** (Weatherford's wages from January 1, 2013 through September 30, 2013 = $46,271.46 *MINUS* approximately $11,707.11 earned at Silver Line from January 1, 2013 through September 30, 2013 *MINUS* $26,000 earned at J.P. Jenks).

If, *arguendo*, Ayres' lost wages are not cut off in September of 2013, then

they should be cut off in April of 2014 when Ayres became disabled.[5]  The ALJ's and ARB's failure to limit damages based upon Ayres' post-Weatherford earnings was inconsistent with the substantial evidence and an abuse of discretion.  Thus, reversal is appropriate.

**F.**     **The Award Of Attorney Fees And Costs Should Be Reversed If The ARB'S Decision On The Merits Is Reversed.**

If this Court finds in favor of Weatherford on the First Petition and reverses the ARB Decision, Claimant will not be entitled to any attorney fees and costs and the Order will be moot.

**G.**     **Claimant's Counsel is Not Entitled to Any Award of Attorneys' Fees and/or Costs Pertaining to Any Work Outside of the DOL Proceedings.**

A party may not recover fees associated with a separate matter or case, or for unsuccessful claims. *See Binta B. v. Gordon,* 710 F.3d 608, 631 (6th Cir. 2013) (refusing to award attorneys' fees incurred in the litigation of a separate case, even where the separate case involved the same facts, same defendant, and utilized the same materials); s*ee also BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.,* 234 F.Supp. 3d 760, 766 (E.D. VA (2017) (court must deduct unsuccessful claims from the lodestar amount); *Braun v. Ultimate charters, Inc.*, N.D. Ohio No. 5:12CV1635, 2014 U.S. Dist. LEXIS 103972, *41 (N.D.

---

[5]  If, *arguendo*, Ayres' lost wages are not cut-off in April of 2014, then Ayres' entitlement to lost wages should end on October 27, 2014 by operation of the after-acquired evidence doctrine.

Ohio July 30, 2014) ("a trial court must separate unsuccessful claims and claims for which attorney's fees may not be awarded, from those for which fees may properly be awarded.") (citing *Hensley v. Exkerhart*, 461 U.S. 424, 434-45 (1983); *Bittner v. Tri-County Toyata*, 58 Ohio St. 3d 143, 145 (Ohio 1991).

Here, the facts underlying Ayres' complaint with the DOL also served as the basis for his complaint filed in the federal case, and the federal case is separate and distinct from the instant proceedings with the DOL. Furthermore, Weatherford prevailed in the federal case, where the Court granted Weatherford's motion for summary judgment and dismissed Claimant's claim.

Despite this, the Order awards $9,555.00 in attorney fees for 27.3 hours of work performed Ayres' federal court case. (Appx., Volume I, Pages 17-25). This work was either performed solely for, or in conjunction with, Ayres' federal court case. For example, the Order awards 12.8 hours of work from 2013 that pertain to discovery and trial preparation in the federal court case. (*Id.*). As to the remaining 14.8 hours, the entries pertain to Mr. Hume's work defending Weatherford's motion for summary judgment decision and discussing the federal court's decision to find in favor of Weatherford. These entries lack a sufficient detailed description showing that these entries pertained to Ayres' Department of Labor case and not his federal case and should be denied on this basis alone. Further, to the extent that these entries pertain to Weatherford's summary judgment motion in the federal

case, the entries are duplicative and Mr. Hume should not be entitled to receive the requested fees for these entries.

The Order also awarded $655.00 in costs associated with the March 31, 2015 deposition of Warren Williams in the federal case. (Appx., Volume I, Pages 17-25). The ARB Decision with respect to attorney's fees is inconsistent with the substantial evidence in the record and an abuse of discretion. Thus, reversal is appropriate.

###    H.    The Attorney Fees And Costs Awarded Are Unreasonable.

"A prevailing party is only entitled to recover reasonable attorney fees. Shore v. Federal Express, 42 F.3d 373 (6th Cir. 1994); *Zarwasch-Weiss v. Slif Economics United States*, 838 F.Supp. 2d 654, 672 (N.D. Ohio 2012) (the court must use a reasonable hourly rate and reasonable amount of hours billed if awarding fees). Indeed, 49 U.S.C. § 31105 states that only reasonable attorneys' fees may be recovered. Similarly, the ALJ and ARB possessed the discretion as to whether to award attorneys' fees, and the amount of any fees awarded. *See Vincent A. Pollock v. Continental Express*, 2010 DOL Ad. Rev. Bd., LEXIS 35, *41 (Apr. 7, 2010); *see also Scott Clarence v. Roadway Express. Inc.*, OALJ No. 1998-STA-8 (Jan. 21, 1999).

> **1.    Claimant's Request For Attorney's Fees Are Unreasonable And Should Be Reduced To Reflect The Appropriate Market Rate For Comparable Attorneys.**

"[A] reasonable rate is one based on a market rate in the community for services rendered by attorneys of comparable skill, experience and reputation" *B&G Mining, Inc. v. DIR., OWCP*, 522 F.3d 657, 665 (6th Cir. 2008). Here, the Order awards Mr. Hume his requested rate of $350 per hour, which is well above the market rate for all hours worked in this matter. (Appx., Volume I, Pages 17-25). To be sure, 127 of the 140.2 hours for which Mr. Hume sought fees pertain to work prior to 2016. (Appx., Volume I, Pages 150-187). The average market hourly rate for attorneys in Youngstown, Ohio was $163 prior to 2016. (See The Economics of Law Practice in Ohio in 2013 (hereafter "OSBA Report"). Claimant provides no evidence to support a rate more than double that for the average Youngstown attorney; and Mr. Hume's statements as to his bar association memberships and self-described litigation experience do not support such a dramatic increase. Accordingly, any fees awarded prior to 2016 should have applied the $163 market rate. *See, e.g., Burnett v. Quest Diagnostics, Inc.*, 2005 U.S. Dist. LEXIS 13370, *20 (E.D. Mich. April 21, 2005) ("the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney.").

As to the 13 hours of work performed in 2016 and 36.6 hours incurred in the ARB proceeding, the ALJ's award of $350 per hour is still considerably above the $318 median market rate for attorneys in 2016. (Appx., Volume XIII, Pages 1989-1992). Accordingly, to the extent that Mr. Hume is entitled to any fees for 2016 or the ARB proceeding, the rate awarded should be no greater than the $318 market rate for attorneys in Youngstown, Ohio for 2016. The ARB's decision to apply the $350 rate to Mr. Hume's work performed at the ALJ level and the ARB level was an abuse of discretion and, therefore, reversal is appropriate.

> **2.** **The Bills Submitted for Claimant's Counsel's Work Do Not Describe His Work In Detail and, Therefore, the Fees Should Be Reduced.**

"The documentation offered in support of the hours charged [by attorneys] must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United State, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 fn. 2 (6th Cir. 1984). "Courts in [the Sixth Circuit] have reduced attorney fees on the basis of insufficient billing descriptions..." *Harkless v. Husted*, 2011 U.S. Dist. LEXIS 62158, *34 fn. 14 (N.D. Ohio Mar. 3 I 2011); s*ee also Zarwasch- Weiss v. Skf Economics United States*, 838 F.Supp. 654, 672 fu. 29 (N.D. Ohio 2012). Moreover, attorney fees have been reduced where "billing records lumped together time entries under one

total so that it was impossible to determine the amount of time spent on each task." *Id.*

The bills submitted by Mr. Hume do not adequately describe the work performed. Many entries are either one word or generically describe a task. (Appx., Volume I, Pages 150-187). For example, Mr. Hume bills 1.0 hour on February 13, 2013 for "[o]n-line research, and another 2.0 hours on April 21, 2016 for "[r]esearch." (*Id.*). Similarly, Mr. Hume bills .30 hours on February 15, 2013, February 25, 2013, March 1, 2013, Ari! 23, 2013, and May 23, 2013 for ""[t]elephone conference with client." (*Id.*). These limited, generic descriptions do not meet the standard proscribed by the lodestar method. *See, e.g., Case by Case v. United Sch. Dist.* No. 233, 157 F.3d 1243, 1253 (10th. Cir. 1998) (billing entries "which simply refer to time spent in 'conference,' do not meet [the lodestar requirements]").

Moreover, many entries are lumped together, with some including work from the federal case, making it impossible to discern the amount of time spent on any given task or case. (*See generally*, Appx., Volume I, Pages 150-187). For example, on February 14, 2013, Mr. Hume billed 3.5 hours for "Drafting documents STAA Complaint Drafting documents Civil Complaint." (*Id.*). Similarly, on June 29, 2015, Mr. Hume bills 3.3 hours for "Drafting documents Discovery Responses Reviewing Orders of ALJ Reviewing Discovery Responses."

(*Id.*). On September 25, 2015 shows an entry for 3.0 hours for "Drafting documents Memorandum in Opposition to Motion to Dismiss Attend discovery Lee Hammons Deposition." (*Id.*).

The generic descriptions make it impossible to discern which task, let alone case, is associated with amount of time input for the entry. Accordingly, because Mr. Hume's billing records are inadequate and do not reasonably explain the time spent on this matter, an award of attorney fees was not appropriate and should be reversed. *See, e.g. Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F.Supp.2d 737, 764-65 (N.D. Ohio 2010) ("[g]iven the vague and incomplete records provided by [plaintiff], as well as the inadequate billing information found in the one-line summaries ... [t]he Court finds a 50% reduction in fees a fair and expeditious solution to determining the sum of total reasonable fees."); see also *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1022 (N.D. Ohio 1997); *Oda. Natural Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1264 (N.D. OK. 2004) (generic block billing may warrant reduction in fees); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) ("a district court may discount requested attorney hours if the attorney fails to keep meticulous, contemporaneous records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks.").

The ARB's failure to reduce Mr. Hume's fees to reflect the inappropriate billing descriptions was an abuse of discretion and, therefore, reversal is appropriate.

## I. The Award of Attorney's Fees and Costs Was Inappropriate Because This Case Was Close, and Defendant Acted in Good Faith.

The ALJ and ARB should not have awarded any attorney fees or costs to Ayres due to the closeness of the case and, related, Defendant's good faith. *White & White, Inc. v. American Hospital Supply Corp.,* 786 F.2d 728, 730 (6th Cir. 1986) ("[w]e have described several circumstances in which a denial of costs is a proper exercise of discretion under the rule. Such circumstances include … cases that are 'close and difficult.'") (quoting *United States Plywood -1 Corp. v. General Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966)); *Knology, Inc. v. Insight Communs. Co.. L.P.*, 460 F.3d 722, 728 (6th Cir. 2008) (both the closeness of the case and the losing party's good faith support denying the award of costs); *Corwin v. Quinonez*, 2013 U.S. Dist. LEXIS 334, *5-6 (N.D. Ohio Jan. 2, 2013) ("the difficulty of discerning the relevant legal authority … and the extent of the factual analysis involved, made for the type of close and difficult case in which this Court is not inclined to award costs and fees"); *Chemetall GmbH v. ZR Energy, Inc.*, 2002 U.S. Dist. LEXIS 158, *1 6-17 (N.D. Ill. Jan. 7, 2002) ("[t[he fact that liability … presented in close questions[] is an important factor to be considered in

determining whether to exercise discretion in favor of awarding attorneys' fees"); *Aftermarket Tech Corp. v. Whatever It Takes Transmissions*, No. 3:00CV-326-R, 2005 U.S. Dist. LEXIS 22496, *5 (W.D. Kent. Oct. 3, 2005) (award of attorney fees and costs was not justified in close case); *Krupp v. Metropolitan Life Ins. Co.*, 174 F. Supp. 2d 545, 549 (E.D. Mich. 2001) (same); *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir. 2000) (same); *Estate of Thompson v. Sun Life Assur. Co. of Can.*, No.4:07-CV-594-Y, 2009 U.S. Dist. LEXIS 27114, *13 (N.D. Tex. Mar. 31, 2009)("[w]here the opponent's position is not groundless or has some merit an award of attorneys' fees is not warranted."); *Rosser v. Pipefitters Union Local* 392, 885 F. Supp. 1068, 1070 (S.D. Ohio 1995) ("[t]he Sixth Circuit specifically approved a denial of costs in close and difficult cases involving numerous... exhibits, transcript pages, and lengthy opinions."). "The closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case." *White & White*, 786 F.2d at 732-33.

Weatherford prevailed in the federal case at summary judgment. The facts and claims underlying the federal case are identical to those asserted in the instant matter. Further, Ayres' Complaint in the instant matter was dismissed after an investigation concluded there was no reasonable cause to believe that Weatherford

violated the STAA. Despite these judgments and findings for Weatherford, Ayres surprisingly prevailed at the hearing in this matter. However, the nearly 100 page Decision evidences the closeness in adjudicating this matter. Indeed, more than 48 pages of the Amended Decision and Order are dedicated to the legal analysis of this matter, with 15 of those pages dedicated solely to whether Claimant made any complaints covered by the STAA. (Appx., Volume I, Pages 56-149). The ARB's Decision did not include any additional facts or analysis which changes this fact. (Appx., Vol. XIII, Pages 2079-2092). Accordingly, the ARB's Decision was inconsistent with the substantial evidence and an abuse of discretion. Thus, reversal is appropriate.

## VI.    **CONCLUSION**

For the foregoing reasons, the Administrative Review Board's November 18, 2020 decision and order, and March 24, 2021 order should be reversed.

/s/David A. Campbell
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Andrea V. Arnold (0099455)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
1375 E. 9th Street, Suite 2250
Cleveland, OH 44114
Telephone: 216-344-9422
Facsimile:  216-344-9421
Email:david.a.campbell@lewisbrisbois.com
      donald.slezak@lewisbrisbois.com
      andrea.arnold@lewisbrisbois.com

*Attorneys for Weatherford U.S., L.P.*

## **6 CIR. R. 32 CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure and 6 Cir. R. 31(g)(1) and 6. Cir. R. 32 (a), the undersigned counsel, relying on the word county of the word-processing system used to prepare this document, certified that the foregoing complies with the 13,000 word count limit issued by this Court's February 18, 2022 briefing schedule. Section I through Section VI of this Brief contain 12,959 words.

*/s/David A. Campbell*
David A. Campbell (0066494)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically on this 29th day of June, 2022.  Notice of this filing will be sent to all parties, when applicable, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.  If parties will not receive notice via the Court's electronic filing system, a true and correct copy of the foregoing will be served via regular United States Mail, postage prepaid, upon the following:

Martin S. Hume (0020422)
Martin S. Hume Co., L.P.A.
6 Federal Plaza Central, Suite 905
Youngstown, Ohio 44503
Telephone: (330) 746-8491
Email: mhume1@ameritech.net

*Attorney for the Estate of Daniel A. Ayres*

Linda H. Wiles
U.S. Department of Labor
Office of the Solicitor/OHS Division
200 Constitution Avenue, N.W., Suite S-4004
Washington, D.C. 20210
Wiles.Linda.H@dol.gov

*Attorney for the Department of Labor,*
*Administrative Review Board*

*/s/David A. Campbell*
David A. Campbell (0066494)