IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

## CASE NO. 20-4342, 21-3282

---

Weatherford U.S., L.P.,
*Petitioner,*
v.
U.S. Department of Labor, Administrative Review Board
*Respondent,*
v.
Estate of Daniel A. Ayres
*Intervenor.*

---

consolidated with

---

No. 21-3017

---

Estate of Daniel A. Ayres
*Petitioner,*
v.
U.S. Department of Labor, Administrative Review Board
*Respondent,*

Weatherford U.S., L.P.
*Intervenor.*

---

On Appeal From The Administrative Review Board
Case No. ARB 2018-0006 : ARB 2018-0074

## THIRD BRIEF OF WEATHERFORD U.S., L.P.

---

/s/David A. Campbell

David A. Campbell (0066494)
Donald G. Slezak (0092422)
Andrea V. Arnold (0099455)
**LEWIS BRISBOIS BISGAARD & SMITH, L LP**
1375 E. 9th Street, Suite 2250
Cleveland, OH  44114
Telephone:  216-344-9422
Facsimile:   216-344-9421
Email:david.a.campbell@lewisbrisbois.com
       donald.slezak@lewisbrisbois.com
       andrea.arnold@lewisbrisbois.com

*Attorneys for Weatherford U.S., L.P.*

# TABLE OF CONTENTS

**Page No.**

I.    <u>PRELIMINARY ISSUES</u>..............................................................1

II.    <u>SUMMARY OF THE ARGUMENT</u>................................................2

III.   <u>RELEVANT FACTS</u>.....................................................................4

    A.  The DOL's Brief Contains Many Misstatements Of The Record ............4

    B.  The DOL Concedes In Its Brief Many Facts That Support
       Weatherford's Position ...................................................................6

    C.  The Complaint In The Litigation Asserted Ayres' Claims That
       Weatherford Retaliated For DOT Complaints ............................8

    D.  In The Summary Judgment Briefing In The Litigation, Ayres Raised
       The Identical Allegations That He Raised Before The ALJ .....................8

    E.  The Federal Court Summary Judgment Decision Entered Final
       Judgment On The Claims At Issue In The Decision................................10

    F.  It Is Undisputed That Work In Weatherford's Williston Operations
       Was Slow During The Time In Question...................................11

    G.  The Reduction-In-Force Was A General Reduction That Impacted
       Weatherford Employees Who Never Complained...................................12

IV.   <u>LAW AND ARGUMENT</u>............................................................12

    A.  Res Judicata And Collateral Estoppel Require The Reversal
       Of The Decision ........................................................................12

       1.  Weatherford Has Not Waived Its Res Judicata Argument ................13

       2.  Ayres' Claim Is Barred By Res Judicata.............................................14

       3.  Ayres' Claims Are Barred By Collateral Estoppel ............................16

          a.  The Same Issue Was Litigated In The District Court Case ..........17

       b.  Ayres' Retaliation Claim Was Litigated On The Merits And Resulted In Final Judgment..............................................................18

B.  The "But For" Analysis Is The Proper Standard......................................20

C.  Ayres Cannot Prove Causation Or Pretext Under Either Standard..........22

   1.  There Is No Evidence Of Ayres' Alleged Complaint.........................22

   2.  There Is No Evidence To Support That Any Alleged Complaint Was The "But For" Cause Or Otherwise Causally.............................24

   3.  Ayres Cannot Prove Pretext Or Any Alleged Animus......................26

D.  The Damages Awarded In The Decision Are Erroneous........................28

E.  The ARB Properly Reversed The Punitive Damages Award.................30

F.  AYRES IS NOT ENTITLED TO ATTORNEYS' FEES........................35

V.   CONCLUSION..............................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aftermarket Tech Corp. v. Whatever It Takes Transmissions*,
No. 3:00CV-326-R, 2005 U.S. Dist. LEXIS 22496 (W.D. Kent.
Oct. 3, 2005) ...................................................................................................37

*Balko v. Ukrainian Nat'l Fed. Credit Union*,
No. 13 Civ. 1333, 2014 U.S. Dist. LEXIS 42427 (S.D. N.Y. Mar.
28, 2014) .........................................................................................................21

*Bechold v. IGW Systems, Inc.*,
817 F.2d 1282 (7th Cir. 1987) ...................................................................24, 28

*Bettner v. Admin Review Bd.*,
539 F.3d 613 (7th Cir. 2008) ..........................................................................21

*Bhupendra Parikh v. Cleveland Hardware & Forging Co.*
No. 1:04 CV 2263, 2006 U.S. Dist. LEXIS 34912 (N.D. Ohio May
2006) ...............................................................................................................26

*Brown- Baumbach v. B&B Auto, Inc.*,
437 F. App'x 129 (3d Cir. 2011) .....................................................................26

*Brown-Baumbach v. B&B Auto, Inc.*,
No. 09- 3962, 2010 U.S. Dist. LEXIS 67472 (E.D. Pa. July 6,
2010) ...............................................................................................................26

*Browning-Ferris Indus. V. Kelco Disposal*,
492 U.S. 257 (1989).........................................................................................34

*Butensky v. FedExCorp.*,
No. 2:16-cv-1718, 2018 U.S. Dist. LEXIS 152775 (Dist. Nev. Sep.
7, 2018) ...........................................................................................................20

*Calhoun v. United States DOL*,
576 F.3d 201 (4th Cir. 2009) ..........................................................................21

*Calmat Co. v. United States DOL*,
364 F.3d 1117 (9th Cir. 2004) .........................................................................20

*Carlson v. Green*,
446 U.S. 14 (1980)........................................................................33, 34

*Chemetall GmbH v. ZR Energy, Inc.*,
2002 U.S. Dist. LEXIS 158 (N.D. Ill. Jan. 7, 2002)...........................36

*Citibank, N.A. v. Data Lease Fin. Corp.*,
904 F.2d 1498 (11th Cir. 1990) ....................................................2, 15

*Clark County Sch. Dist. v. Breeded*,
532 U.S. 268 (2001)...........................................................................25

*Clean Harbors Envt. Servs. V. Herman*,
146 F.3d 12 (1st Cir. 1998)................................................................23

*Corwin v. Quinonez*,
2013 U.S. Dist. LEXIS 334 (N.D. Ohio Jan. 2, 2013) .......................36

*Daniel Ayres v. J.P. Jenks, Inc. et al.*,
No. 14CV1631 ...................................................................................29

*Daniel Ayres v. Weatherford U.S., L.P.*,
Case No. 4:13cv00600........................................... 2, 8, 16, 17, 18, 27, 33, 35, 36

*Davis v. Landscape Forms, Inc.*,
640 Fed. Appx. 445 (6th Cir. 2016)...................................................26

*Dreiger v. Mid-American Club*,
No. 95C4490, 1998 U.S. Dist. LEXIS 2536 (N.D. Ill. Mar. 5,
1998) ..................................................................................................29

*Elkerson v. SYNY Logistics, Inc.*,
No. 20 CV 2897, 2022 U.S. Dist. LEXIS 70586 (N.D. Ill. Apr. 18,
2022) ..................................................................................................21

*Enertech Elec. V. Mahoning County Comm'rs.*,
85 F.3d 257 (6th Cir. 1996) ...............................................................13

*Feldman-Boland v. Stanley*,
2016 WL 3826285 (S.D. N.Y. 2016)............................................17, 18

*Formella v. United States Dep't of Labor*,
628 F.3d 381 (Dec. 10, 2010) ............................................................21

*Gaines v. K-Five Constr. Corp.*,
  742 F.3d 256 (7th Cir. 2014) ..............................................................20

*Gibbs v. Gibbs*,
  210 F.3d 491 (5th Cir. 2000) ..............................................................37

*Inwalle v. Reliance Medical Products, Inc.*,
  515 F.3d 531 (6th Cir. 2008) ..............................................................35

*Kettner v. Compass Group USA, Inc.*,
  570 F.Supp.2d 1121 (D. Minn. 2008)..................................................32

*Knology, Inc. v. Insight Communs. Co.. L.P.*,
  460 F.3d 722 (6th Cir. 2008) ..............................................................36

*Krupp v. Metropolitan Life Ins. Co.*,
  174 F. Supp. 2d 545 (E.D. Mich. 2001) .............................................37

*Melton v. United States DOL*,
  373 Fed. Appx. 572 (6th Cir. 2010)....................................................21

*Murphy v. Household Finance Corp.*,
  560 F.2d 206 (6th 1977) ...............................................................33, 34

*National Bank of Bloomington v. Norfolk & W. Ry.Co.*,
  73 Ill. 2d 160 (1978) ...........................................................................33

*O'Hara v. Memorial Sloan-Kettering Cancer Center*,
  79 Fed. App'x 471 (2003)............................................................17, 18

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ..............................................................16

*R&B Transp., LLC v. United States Department of Labor*,
  618 F.3d 37 (1st Cir. 2010)..................................................................21

*Ridgley v. United States DOL*,
  298 F. App'x 447 (6th Cir. 2008) ........................................................21

*Rosser v. Pipefitters Union Local*
  392, 885 F. Supp. 1068 (S.D. Ohio 1995) ..........................................37

*Scott v. Reif,*
    659 Fed. Appx. 338 (6th Cir. 2016) ................................................... 15

*Sherman v. Ludington,*
    No. 91-3936, 1992 U.S. App. LEXIS 16246 (6th Cir. July 7, 1992) ................ 15

*Southworth v. Northern Trust Secs.,*
    2013-Ohio-2917 (Ohio Ct. App., Cuyahoga County July 3, 2013) .................. 29

*Stanton v. District of Columbia Court of Appeals,*
    127 F.3d 72 (D.C. Cir. 1997) ................................................... 15

*Stark v. Hartt Transp. Sys.,*
    37 F.Supp.3d 445 (Dist. Ma. 2014) .............................................. 21

*Estate of Thompson v. Sun Life Assur. Co. of Can.,*
    No.4:07-CV-594-Y, 2009 U.S. Dist. LEXIS 27114 (N.D. Tex. Mar. 31, 2009) ........ 37

*Thurman v. Yellow Freight Sys., Inc.,*
    90 F.3d 1160 (6th Cir. 1996) ................................................... 29

*United States v. NEC Corp.,*
    11 F.3d 136 (11th Cir. 1993) ................................................... 32

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013) ........................................................... 21

*Wasek v. Arrow Energy Servs.,*
    682 F.3d 463 (6th Cir. 2012) ................................................... 26

*Westwood Chemical Co. v. Kulick,*
    656 F.2d 1224 .................................................................. 15

*White & White, Inc. v. American Hospital Supply Corp.,*
    786 F.2d 728 (6th Cir. 1986) ............................................... 36, 37

## Statutes

ADA ................................................................................ 18, 32

Civil Rights Act Title VII .................................................. 16, 20, 21, 22

FLSA ......................................................................... 17, 18, 19

O.R.C. §§ 4112.01 *et seq.* .........................................................................29

Ohio Whistleblower Protection Act...........................................................18

**Other Authorities**

Complaint Was The "But For" ..................................................................24

Restatement of Judgments § 61 ...............................................................15

## I.    <u>PRELIMINARY ISSUES</u>

Appellant Weatherford U.S., L.P.'s ("Weatherford") Initial Brief contained a Statement of Jurisdiction and Statement of Issues.   Weatherford re-incorporates those statements into this Brief.

## II.   __SUMMARY OF THE ARGUMENT__

Weatherford U.S., L.P. ("Weatherford") submits this brief in response to the U.S. Department of Labor, Administrative Review Board (the "DOL")'s brief (the "DOL Brief") and the Estate of Daniel A. Ayres ("Ayres") brief ("Ayres Brief").

Both the DOL Brief and Ayres Brief confirm that the decision of the Administrative Law Judge (the "ALJ Decision") and the decision of the Administrative Review Board (the "ARB Decision) (collectively, the "Decision") should be reversed.  Specifically, neither the DOL Brief nor Ayres Brief rebut the fact that the U.S. District Court for the Northern District of Ohio found that Ayres was discharged in connection with a legitimate and lawful reduction-in-force that did not support a claim for retaliation and, therefore, the claim is barred by res judicata.[1]

The only dispute as to the application of res judicata is whether the two actions involve the same issues. It is well-established that "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action," the two cases  are considered to be "the same 'claim' or cause of action' for purposes of res judicata." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990). As set forth below, the district court was presented with the identical facts as the ALJ. Accordingly, res judicata bars the claims in this matter

---

[1] *Daniel Ayres v. Weatherford U.S., L.P.*, Case No. 4:13cv00600 (the "Litigation")

and the Decision should be reversed in its entirety.

Assuming, *arguendo*, that res judicata or collateral estoppel does not bar Ayres' claim, Ayres' claim nonetheless fails on the merits. First, the DOL concedes in its Brief that Weatherford initiated a reduction-in-force due to a slow down in work in the months leading up to Ayres' discharge. In fact, the DOL admits that Ayres had little to know work in August, 2012.

As to Ayres' alleged complaint of retaliation, neither the DOL nor Ayres present any facts supporting the alleged complaint aside from conclusory statements or from Ayres' own testimony. In fact, the DOL cites non-factual conclusions made in the Decision regarding (1) the directive allegedly given to Ayres to drive outside of his CDL; and (2) Ayres' alleged August 2012 complaint regarding that directive. The citations are not supported by any facts in the record and are simply conclusory statements made in the Decision which are the subject of this Appeal.

More importantly, the citations – and the Decision itself – are wholly inconsistent with the record. To be sure, Ayres' co-workers testified that they were unaware of any directive given to Ayres to drive outside of his CDL certification and were unaware of the alleged August 2012 complaint. Simply put, there is no evidence in the record to support the Decision of the ALJ and the ARB to conclude that Ayres was discharged for his alleged complaint and not due to the significant lack of work and performance.

Accordingly, the substantial evidence does not support the Decision and this Court should reverse the Decision.

## III.  <u>RELEVANT FACTS</u>

### A.  <u>The DOL's Brief Contains Many Misstatements Of The Record</u>.

As an initial matter, the DOL cites as truth the ALJ and ARB *conclusions* in their respective decisions, without otherwise citing to the record.  For example, the DOL concludes that "[d]rivers at the Williston site were sometimes asked to drive outside of their certification, and this was a safety concern among certain employees who feared losing their licenses." (DOL Brief at 8).  In doing so, the DOL cites to the ALJ's faulty conclusion in the Decision. (Brief at 8, citing the Decision at 54, Appx., Vol. 1, Page. 109).  Another example is the DOL stating that "Mr. Ayres refused to drive outside his certification when Mr. Hammons directed him to do so.") (DOL Brief at 8, citing the Decision at 62, Appx., Vol. I, Page 117).

However, Ayres is unable to identify the dates he claims that he was asked to take assignments outside of his CDL certification, and he admits his time sheets and driver logs do not identify any of these dates. (Appx., Vol. IV, Pages 765-66, 769). Following the hearing before the ALJ, post-hearing depositions were held primarily to determine the veracity of Ayres' allegations regarding his claim that he was asked, on approximately three occasions, to operate equipment outside of his CDL. (Appx., Vol. I, Page 57). These depositions did not support Ayres' version of

the relevant facts. The witnesses presenting testimony through deposition were Ayres' coworkers Brian Gould, Richard Hansen, Brian Pirone, Dusty Tate and Ayres' supervisor Lee Hammons.

Gould worked on the same crew as Ayres and admitted that he never witnessed Ayres being requested to take any actions that were unsafe or outside of his CDL. (Appx., Vol. II, Pages 368-69). Hansen also worked on the same crew as Ayres and admitted that he never witnessed Ayres being requested to take actions that were unsafe or outside his CDL. (Appx., Vol. II, Pages 416, 438-39). Pirone had no knowledge of any CDL issues between Ayres and Weatherford. (Appx., Vol. II, Pages 395-97). Tate was also an Equipment Operator, denied that he ever directed Ayres to take assignments outside his CDL, and testified that it was in fact acceptable for an employee to inform Weatherford that the employee did not have a certain CDL certification because there were numerous employees in Williston that were available if a certain employee was not qualified for a particular task. (Appx., Vol. III, Pages 552-54).

Finally, Ayres' supervisor, Hammons, testified that he was informed on one occasion by Ayres that he was not qualified to operate a certain pump, and Hammons recalls checking Ayres' CDL to confirm that he was not permitted to operate the pump and, thereafter, assigning the pump duty to another employee. (Appx., Vol. III, Pages 568-69). Hammons recalls Ayres' driving restriction as nothing unusual

and a non-issue.  (Appx., Vol. III, Pages 569-70).

The DOL alleges in its Brief that Ayres was a good employee and that "Ayres never refused any opportunity to do extra work." (DOL Brief at 8).  However, the hearing and deposition testimony showed that Ayres refused non-driving assignments, which were expected because driving duties were not as in-demand as anticipated, and was confrontational with other employees. (Appx., Vol. III, Pages 570-71; Appx., Vol. IV, Pages 763, 817).

The DOL also alleges that "Mr. Crabb admitted that he threatened to fire anyone who went over his head to HR…" (DOL Brief at 9 and 27).  However, the evidence shows that such threats were not to be taken literally. (Appx., Vol. II, Pages 348-50, 360-61).  In fact, the post-hearing depositions demonstrate that Weatherford's employees did not believe the filing of a complaint would result in any adverse actions. Indeed, Gould, along with other employees, had filed numerous complaints, yet maintained employment with Weatherford. (Appx., Vol. II, Pages 348-50, 360-61). Additionally, the threat by Crabb was not to Ayres, but was made to *all* employees at the Williston branch. (Appx. Vol. VI, Page 1140).

### B.  <u>The DOL Concedes In Its Brief Many Facts That Support Weatherford's Position</u>.

The DOL concedes many key facts in its Brief which firmly support Weatherford's legitimate decision to include Ayres in its lawful reduction-in-force.

First, the DOL concedes that Ayres did not have work in the months leading

up to the reduction-in-force:

> "[w]ork at the Williston site was slow during July and August 2012, and supervisors tried to find non-equipment operator duties for employees like Mr. Ayres to keep them busy.

(DOL Brief at 8).

The DOL concedes that Weatherford was forced to create a list of non-essential employees due to the slow work: "[a]s a result of the lack of work, Weatherford created a list of fifteen non-essential employees." (DOL Brief at 10). The DOL further confirms that employees placed on the list would not be called back to work due to the lack of work: "[t]he appearance of an employee's name on the list did not mean that they were laid off but meant that they would not receive a call back from their next rotation." (DOL Brief at 10). The DOL admits that Ayres was placed on the non-essential list in early August 2012 and was not called back to return to the Williston site on September 5, 2012. (DOL Brief at 11). As to Ayres' alleged complaint, the DOL admits that Ayres did not submit any alleged written complaint until weeks later on September 20, 2012. (DOL Brief at 11).

As to Ayres' performance, the DOL concedes that "[o]n August 20, 2012, the last day of Ayres; rotation, [Ayres] was escorted off Weatherford's premises following a verbal altercation." (DOL Brief at 11).

### C.    The Complaint In The Litigation Asserted Ayres' Claims That Weatherford Retaliated For DOT Complaints.

The DOL only briefly addresses res judicata and collateral estoppel in the Brief. (*See generally*, Brief). The DOL primarily argues that the District Court did not address the STAA claim reviewed by the ALJ. (DOL Brief at 35-37). The DOL makes these arguments without citing to relevant portions of the District Court case. (*Id.*). However, the Complaint in the Litigation explicitly alleged that Ayres "reported" to Weatherford that "Weatherford retaliated against a coworker who complained that he was asked to carry loads that were not properly permitted in accordance with United States Department of Transportation regulations" and that Weatherford "employees were being asked to carry loads in violation of Department of Transportation regulations. (Appx., Vol. III, Pages 496-500).

### D.    In The Summary Judgment Briefing In The Litigation, Ayres Raised The Identical Allegations That He Raised Before The ALJ.

Ayres did not seek to stay the federal court matter. (*See generally* Litigation docket). Rather, Ayres participated in discovery, and then opposed Weatherford's motion for summary judgment. (*See generally* Litigation docket). In fact, both the DOL and Ayres cite to several deposition transcripts from the District Court case in its Brief. (*See, e.g.*, DOL Brief at 9 (Ayres deposition testimony, Vol. VII, 1206); (Crabb deposition, Vol. VI, 1140); DOL Brief at 10 (Williams deposition, Vol. VII, 1315-1318); DOL Brief at 22 (Nicholson deposition, Vol. VI, 1197); *see*

*also* Ayres Brief at 17 (Williams deposition, Vol. VII, Page 1317); Ayres Brief at 17 (Crabb deposition, Vol. VI, Pages 1140, 1144); Ayres Brief at 14 (Ayres deposition, Vol. VII, Pages 1208-1209); Ayres Brief at 41 (Nicholson deposition, Vol. VI, Pages 1607-1609)).   The DOL and Ayres cite to the District Court depositions for facts material to the key issue in this matter: whether Ayres' submitted a complaint to Weatherford prior to his discharge. ((DOL Brief at 10, Appx. Vol. VII, Page 1317; DOL Brief at 22, Appx. Vol. V., Page 1197); *see also* Ayres Brief at 17)).

Ayres' Summary Judgment Opposition explicitly included allegations that mirror those relied upon by the ALJ: "Ayres also alleges that he was discharged in retaliation for making reports informing Weatherford management about (1) violations of Department  of Transportation regulations relating to safety; (2) violations of law related to transportation of hazardous materials; and (3) Weatherford employees drinking and driving company vehicles." (App'x Vol. III, Pages 522-531). Ayres' affidavit submitted in support of the opposition alleges that he filed complaints with Weatherford that "Weatherford was violating DOT regulations by requiring drivers to carry loads on commercial vehicles that were not permitted under DOT regulations." (Appx. Vol III, Page 534) The affidavit further alleges that such complaints were made "at least four (4) times" and that Ayres also complained about drivers transporting hazardous materials without

proper certification. (Appx. Vol III, Page 534). Similarly, the affidavit alleged that the actions described above were "criminal in nature violating federal law relating to surface transportation of goods" and "were likely to cause an imminent risk of physical harm and/or a hazard to public safety." (Appx. Vol III, Page 536).

Finally, consistent with the claims at issue before the ALJ, Ayres' affidavit alleges that he was discharged in retaliation for these complaints. (Appx., Vol. III, Page 537).

### E.   The Federal Court Summary Judgment Decision Entered Final Judgment On The Claims At Issue In The Decision.

The summary judgment decision addressed Ayres' allegations that his discharge was not due to the RIF, but rather due to Ayres' complaints. (Appx. Vol III, Pages 505-516). The facts cited by the district court included Ayres' claim that he informed his supervisor of "load violations." (Appx. Vol. III, Page 508). The facts further include Ayres' claim that he informed Weatherford's human resources department that there were "DOT violations." (Appx. Vol. III, Page 508). Ayres asserted a claim under Ohio's whistleblower statute. (Appx. Vol III, Pages 509-510). However, because the alleged wrongful conduct occurred in North Dakota, the district court granted summary judgment in favor of Weatherford. (Appx. Vol III, Pages 509-510). As to Ayres' claim of retaliation, the district court held that there was no genuine issue of material fact regarding Ayres' inability to prove pretext. (Appx. Vol III, Pages 511-512). Relevant to this matter, the district court concluded

that the facts do "not support a causal connection between [Ayres'] complaints concerning overtime and his discharge as part of a general reduction in force." (Appx. Vol III, Page 511).

### F.    It Is Undisputed That Work In Weatherford's Williston Operations Was Slow During The Time In Question.

Weatherford's Williston fracking operations had only just begun when Ayres first arrive in Williston. (Appx., Vol. IV, Pages 752, 816-17). In the hopes that there would be high customer demand in Williston, Weatherford hired over one hundred Equipment Operators, including Ayres. (Appx., Vol. IV, Pages 752, 817-18). During the hearing, Ayres admitted "[t]o be honest, there was hardly any fracking for Weatherford…. "[t]here were nobody out working on the crews…. [Equipment Operators] were sitting there." (Appx., Vol. IV, Pages 763, 767). Ayres further testified that "[n]inety percent of the people went back to the man camp" to sit because fracking work was not available. (Appx., Vol. IV, Page 767). Although this lawsuit arises out of Ayres' Commercial Driving License responsibilities, Ayres admits that he operated trucks on only a few occasions with Weatherford during his six weeks in Williston, totaling only nine hours of drive time. (Appx., Vol. IV, Pages 754, 758, 763). Indeed, the DOL concedes in its Brief that work slowed in the months leading up to Weatherford's decision to implement a reduction in force. (DOL Brief at 8).

### G.   The Reduction-In-Force Was A General Reduction That Impacted Weatherford Employees Who Never Complained.

It is undisputed that Ayres requested to be transferred out of the Williston operation. (Appx., Vol. IV, Pages 690-91).

Due to a lack of work, the Williston fracking operations reduced the workforce in late 2012. (Appx., Vol. IV, Pages 829-30; Appx., Vol. II, Pages 426-27). The reduction impacted Equipment Operators beyond Ayres. (Appx., Vol. IV, Pages 784-86). In total, sixteen employees were impacted by the reduction. (Appx., Vol. IV, Pages 784-86). Fifteen of these employees held the Equipment Operator position. (Appx., Vol. III, Page 492). At least four other Weatherford employees holding the Equipment Operator II position were subject to the same reduction as Ayres. (Appx., Vol. III, Page 492). The district court reviewed these same facts and confirmed that this "general reduction in force" precluded a finding of a causal connection.  (Appx. Vol. III, Page 515).

## IV.   LAW AND ARGUMENT

### A.   Res Judicata And Collateral Estoppel Require The Reversal Of The Decision.

The DOL and Ayres primarily argue two points (1) that the ALJ and the ARB did address res judicata and collateral estoppel and determined that the issue was not litigated in the District Court case; and (2) that Weatherford has waived any res judicata/collateral estoppel argument.  The DOL and Ayres are incorrect on both

issues.

### 1.     Weatherford Has Not Waived Its Res Judicata Argument.

The DOL and Ayres both allege that Weatherford waived its res judicata argument because "Weatherford did not raise its res judicata argument before the ALJ or the ARB…" (DOL Brief at 38; Ayres' Brief at 64).  The DOL and Ayres are incorrect.

Weatherford raised its res judicata argument before the ARB in its Reply in Support of its Initial Brief. (Appx. Vol. XIV, pp. 2406-2415).  Accordingly, the res judicata argument was raised during the agency proceedings and is a proper argument for this Court to address.

Assuming, *arguendo*, that Weatherford did not raise the res judicata argument with the Agency – which it did – this Court nonetheless has the discretion to address the argument on the merits. *See Enertech Elec. V. Mahoning County Comm'rs.*, 85 F.3d 257,, 261 (6th Cir. 1996).  Indeed, "[w]hen a party fails to present an argument to the district court, [the Appellate Court] has discretion to resolve the issue only where the proper resolution is beyond any doubt, or where injustice might otherwise result." *Id.* As set forth below, Ayres' claim is barred by res judicata beyond any doubt and refusing to consider the argument and find the claims so barred would result in manifest injustice to Weatherford that is inconsistent with the District Court's Summary Judgment decision.

### 2.    Ayres' Claim Is Barred By Res Judicata.

First, the undisputed facts clearly demonstrate that res judicata requires the reversal of the Decision. There are four requirements for the application of res judicata: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Winget* 537 F.3d at 577-578 (6th Cir. 2008) (citing *Browning v. Levy*, 283 F.3d 761, 771-772 (6th Cir. 2002).

It is undisputed that three of the elements of res judicata have been met. Specifically, element one has been met because there was a final summary judgment decision that Ayres elected not to appeal. Element two has been met because both matters involve Weatherford and Ayres. Finally, as to the issues litigated, it is undisputed that Ayres' federal court complaint, Summary Judgment Opposition, and his affidavit all asserted the allegation that it was unlawful for Weatherford to discharge Ayres based on his DOT violation complaints.

The only dispute as to the application of res judicata is whether there is an identity of the causes of actions between the two matters. Both Ayres and the DOL allege that res judicata does not apply because his claim arose out of the law of another state and was not addressed on the merits. Specifically, the DOL and Ayres allege that because his whistleblower claim was brought under the wrong state's law

that he should be permitted to proceed with this matter. (Ayres' Brief at 58-59; *see also* DOL Brief at 35-36). However, it is well-established that "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action," thetwo cases are considered to be "the same 'claim' or 'cause of action' for purposes of res judicata." *Citibank*, 904 F.2d at 1503; *see also Sherman v. Ludington*, No. 91-3936, 1992 U.S. App. LEXIS16246, *14-15 (6th Cir. July 7, 1992).

In order to determine whether claims derive from the same nucleus of facts, courts look at "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (quoting Restatement (Second) of Judgments § 24(2) (1982)); *see also Scott v. Reif*, 659 Fed. Appx. 338, 343 (6th Cir. 2016). The two matters, as is evident from Ayres' Summary Judgment Opposition, involve the identical facts and claims. Ayres asserts the same claims, the same facts, and the same theories in both matters.

Moreover, courts have long held that "the plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action." Restatement of Judgments § 61; *see also Westwood Chemical Co. v. Kulick*, 656

F.2d 1224, 1229 ("[t]he fundamental function of the doctrine of res judicata is to prevent the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy. The doctrine's objective is to give finality to prior judgments and put an end to litigation."). One of the claims asserted in the Litigation was a whistleblower claim, and it is undisputed that the evidence of a discharge based on the refusal to drive a truck in violation of DOT regulations would support such a claim.

Finally, the fact that the claims asserted in this action could not be directly asserted in Litigation does not preclude the application of res judicata. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714-715 (9th Cir. 2001) (res judicata barred later Title VII claim even though the administrative process stopped the plaintiff from asserting the Title VII claim in the first lawsuit). Rather, it was incumbent upon Ayres to ask the federal court to "stay" its decision pending completion of this administrative matter. *Id.* at 715. Ayres' decision to proceed to judgment in the federal court matter precluded the ALJ from deciding the same issue in a contrary fashion. Accordingly, the Decision should be reversed based on res judicata.

### 3.    Ayres' Claims Are Barred By Collateral Estoppel.

The briefing by the DOL and Ayres confirm that the issue regarding Ayres'

complaint was fully litigated in the Litigation.

### a.    The Same Issue Was Litigated In The District Court Case.

First, Ayres' Litigation involved identical issues necessary to the outcome of the matter and resulted in a final judgment on the merits following Ayres' full opportunity to litigate the issues. In both cases, Ayres alleged retaliatory discharge for raising verbal complaints and a single email complaint on September 20, 2012, which listed the alleged DOT violations and FLSA violations. (Appx., Vol. III, Pages 496-500, 501-504). The same alleged complaints were at issue in both cases. (*Id.*). In both cases, Weatherford argued that it dismissed Ayres as part of a necessary reduction-in-force – not because of any of Ayres' workplace complaints. (Appx., Vol. II, Pages 281-313; Appx., Vol. III, Pages 505-517).

Importantly, the District Court determined that even if Ayres could establish a *prima facie* case, he could not establish a retaliation claim because Weatherford's reduction-in-force was valid, and the reduction-in-force was the result of a legitimate, non-discriminatory business reason that was not pretextual. (Appx., Vol. III, Pages 505-517).

Ayres attempts to distinguish the pretext ruling issued by the District Court on Ayres' retaliation claim from that of the pretext at issue for Ayres' retaliation claim under the STAA. Specifically, Ayres alleges that *O'Hara v. Memorial Sloan-Kettering Cancer Center*, 79 Fed. App'x 471 (2003) and *Feldman-Boland v. Stanley*,

2016 WL 3826285 (S.D. N.Y. 2016) hold that a court's ruling on the issue of pretext in a prior litigation is not dispositive on the issue of pretext in a subsequent litigation. However, Ayres concedes in his Brief that both *O'Hara* involved an ADA and a retaliation claim, and that *Feldman-Boland* involved gender discrimination and retaliation – neither of those cases involved two retaliation claims based upon the same set of facts and the same complaint and that were litigated in different forums. Here, Ayres' asserted retaliation claims in both the Litigation case and in the matter before the DOL. Accordingly, the issue has been ruled upon and Ayres' claim is collaterally estopped.

> ### b.  *Ayres' Retaliation Claim Was Litigated On The Merits And Resulted In Final Judgment.*

Ayres asserted two claims for retaliation in the District Court case: a Ohio Whistleblower Protection Act claim and a claim for retaliation under the FLSA. Both the DOL and Ayres allege in their briefs that the Ohio whistleblower claim was not fully litigated because it was dismissed on procedural grounds. (DOL Brief at 36; Ayres Brief at 62-63). However, as set forth above, the District Court determined that even if Ayres could establish a *prima facie* case, he could not establish a retaliation claim because Weatherford's reduction-in-force was valid, and the reduction-in-force was the result of a legitimate, non-discriminatory business reason that was not pretextual. (Appx., Vol. III, Pages 505-517). Accordingly, the issue regarding Ayres' discharge has been fully litigated.

Assuming, *arguendo*, that the whistleblower claim was not fully-litigated – which it was – there is no dispute that the District Court issued summary judgment on the merits on Ayres' FLSA claim because it properly found Weatherford's reduction in force to be lawful. Ayres conveniently ignores the fact that the District Court granted summary judgment on the merits to Weatherford on Ayres' FLSA retaliation claim. The DOL concedes this fact in its brief but, instead, alleges that the FLSA claim "did not involve the precise issue Mr. Ayres' raised [in the DOL proceedings]." (DOL Brief at 36). However, as set forth above, the FLSA claim and the STAA claim both concerned claims for retaliation and Weatherford's reduction in force as the legitimate reason underlying the decision to discharge Ayres. Accordingly, Ayres' claim has been fully litigated.

Finally, Ayres alleges that he was not provided with a full and fair opportunity to litigate his claim in the District Court case. (Ayres Brief at 63). However, as set forth above, the District Court addressed the complaint raised by Ayres that is the subject of his STAA claim. The District Court addressed Weatherford's reduction-in-force, the reasons for the reduction-in-force, and Ayres' arguments with respect thereto. Finally, the District Court reviewed and considered the same testimony relied upon by Ayres and the DOL in this matter. Accordingly, Ayres had a full and fair opportunity to address the issue of retaliation and, equally as important, Weatherford's legitimate reduction-in-force, which the District Court found to be

lawful and to **_not support_** a claim for retaliation.  Thus, Ayres' claims are barred by collateral estoppel.

> ### B.    The "But For" Analysis Is The Proper Standard.

Ayres and the DOL only briefly discuss the standard applicable to Ayres' STAA claim. (*See generally* DOL Brief and Ayres Brief).  However, neither Ayres nor the DOL address the authorities provided by Weatherford holding that Ayres' STAA claim is applied using the Title VII "but for" standard.  This is likely so because neither the DOL nor Ayres can support the faulty standard used by the ALJ and the ARB in addressing Ayres' retaliation claim.

"STAA plaintiffs' proof of unlawful retaliation is established using the same framework used to prove discrimination under Title VII of the Civil Rights Act of 1964…" *Calmat Co. v. United States DOL*, 364 F.3d 1117, 1122 (9th Cir. 2004) (applying the McDonnell-Douglas standard to STAA claim) (citing *Clean Harbors Envt. Servs. V. Herman*, 146 F.3d 12, 19 (1st Cir. 1998); *Yellow Freight Sys. V. Reich*, 8.F.3d 980, 983 (4th Cir. 1993) ("[t]he basic Title VII proof scheme governs actions under the STAA.")); *see also Butensky v. FedExCorp.*, No. 2:16-cv-1718, 2018 U.S. Dist. LEXIS 152775, *9-10 (Dist. Nev. Sep. 7, 2018) ("[u]nlawful retaliation under STAA is established using the same framework that courts use to prove discrimination under Title VII."); *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 268 (7th Cir. 2014) (relying on Title VII retaliation authorities to address STAA

retaliation claim); *Melton v. United States DOL*, 373 Fed. Appx. 572, 576-77 (6th Cir. 2010); *Ridgley v. United States DOL*, 298 F. App'x 447, 452 (6th Cir. 2008); *R&B Transp., LLC v. United States Department of Labor*, 618 F.3d 37, 46 (1st Cir. 2010); *Bettner v. Admin Review Bd.*, 539 F.3d 613 (7th Cir. 2008); *Calhoun v. United States DOL*, 576 F.3d 201, 214 (4th Cir. 2009).

In addressing Title VII retaliation claims, federal courts are required to apply a "but for" standard of causation. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, (2013).  To succeed on a retaliation claims under the Supreme Court's standard, the plaintiff must show that the defendant would not have taken the adverse action but for the protected activity." *Id.*

Federal Courts have applied the Supreme Court's retaliation standard to STAA retaliation claims.  *See, e.g., Formella v. United States Dep't of Labor*, 628 F.3d 381, 389 (Dec. 10, 2010) (applying but for causation to STAA claim); *see also Stark v. Hartt Transp. Sys.*, 37 F.Supp.3d 445, 468-87 (Dist. Ma. 2014) (applying the "but for" standard to STAA and state law whistleblower claims); *see also Balko v. Ukrainian Nat'l Fed. Credit Union*, No. 13 Civ. 1333, 2014 U.S. Dist. LEXIS 42427, *30-32 (S.D. N.Y. Mar. 28, 2014) (relying on similar retaliation statutes such as the STAA in applying the *Nassar* "but for" retaliation standard to whistleblower retaliation claim); *Elkerson v. SYNY Logistics, Inc.*, No. 20 CV 2897, 2022 U.S. Dist. LEXIS 70586, *11-13 (N.D. Ill. Apr. 18, 2022) (applying the "but for" standard to

STAA retaliation claim).

Neither the DOL nor Ayres have provided any case law rebutting this fact, and their argument that the "but for" causation analysis somehow does not apply to Ayres' STAA claim is wholly inconsistent with the well-established tenet that Title VII authorities govern STAA claims. Accordingly, the ALJ and the ARB applied the wrong standard, and the Decision should be reversed.

### C. Ayres Cannot Prove Causation Or Pretext Under Either Standard.

#### 1. There Is No Evidence Of Ayres' Alleged Complaint.

The DOL and Ayres go to great lengths to conclude that Ayres complained to Nicholson in August 2012 and that this somehow confirms that Weatherford both knew of Ayres' alleged protected acidity and allegedly used it to make the decision to include Ayres in the reduction-in-force. However, Ayres' only alleged complaint given credence by the ALJ encompasses Ayres' alleged telephone calls to James Nicholson in HR, which Ayres referenced in an email Ayres sent over a month after leaving Williston. (Appx., Vol. I, Page 112). Outside of Ayres, no testimony was presented to support the existence of Ayres' complaint to Nicholson. Further, the testimony and evidence showed that those making the reduction-in-force decisions were unaware of any such conversations between Nicholson and Ayres. (Appx., Vol. I, Pages 80-81, 88). Indeed, despite relying upon Nicholson's testimony to allegedly support their untenable position, Nicholson testified that Ayres was no longer on site

during the alleged conversation and, more importantly, did not provide any testimony regarding the substance of the conversation. (Appx, Vol. VII, Pages 1197-98).

Importantly, the DOL concedes that Ayres did not submit any written documentation until September 20, 2022. (DOL Brief at 22). Indeed, it is undisputed that Ayres did not file any written complaints until he sent an email to Weatherford on September 20, 2012 concerning a variety of issues, one of which was the allegation that workers were allegedly asked to drive outside of their CDL certification. (Appx., Vol. IV, Page 765). Importantly, the email failed to address any alleged violation as to Ayres but was instead a general remark concerning other employees. (Appx., Vol. I, Pages 112-13).

Courts have held that with regard to internal complaints, the "communication to the employer must be sufficient to give notice that a complaint is being filed." *See e.g. Clean Harbors Environ. Servs., Inc. v. Herman*, 146 F.3d 12, 29 (1st Cir. 1998). Courts have recognized that "there is a point at which an employee's concerns and comments are too generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the STAA." *Id.* at 29-30. Ayres' vague email did not provide sufficient detail to Weatherford to constitute a "complaint" under the STAA. The evidence establishes that Ayres failed to file any complaint other than the September 20, 2012 email. Accordingly, Ayres' claim fails because

he did not engage in any protected activity.

>    **2.    There Is No Evidence To Support That Any Alleged Complaint Was The "But For" Cause Or Otherwise Causally Connected To Ayres' Discharge.**

There is no dispute that work at the Williston plant was slow in the months leading up to Ayres' inclusion in the reduction-in-force. The DOL confirmed this fact in its Brief:

> "[w]ork was slow during July and August 2012, and supervisors tried to find non-equipment operator duties for employees like Mr. Ayres to keep him busy."

 (DOL Brief at 8).

Ayres admitted that there was little work for him and the other Equipment Operators.(Appx., Vol. IV, Pages 763, 767). Due to a lack of work, the Williston fracking operations reduced the workforce. (Tr. 234-35; Dep. Hansen at 26-27). The reduction-in-force impacted Equipment Operators beyond Ayres. (Appx., Vol. III, Page 492); *see also* Appx., Vol. IV, Pages 784-86). The federal court reviewed these facts and confirmed that this "general reduction in force" precluded a finding of a causal connection. (Appx., Vol. III, Page 515). Contrary to the Decision, "[courts] will not reevaluate business decisions made in good faith … [i]t is enough the decision was genuinely and honestly made in an attempt to select  the employees retained on the basis of performance related considerations." *Bechold v.  IGW Systems, Inc.*, 817 F.2d 1282, 1285 (7th Cir. 1987). The ALJ's finding of a causal

connection is contrary to the federal court's decision and the undisputed facts. The general reduction-in-force, which included many Weatherford employees who never complained, precludes a finding of pretext. Accordingly, the Decision is not supported by the substantial evidence and should be reversed.

Finally, Ayres cannot show any causal connection because the decision to include him in the reduction-in-force was made prior to his September 20, 2012 complaint. *See Clark County Sch. Dist. v. Breeded*, 532 U.S. 268, 273 (2001) ("[e]mployers need not suspend previously planned [employment decisions] upon discovering [a protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Accordingly, there is no causal connection between the decision or his eventual termination and his September 20, 2012 complaint. Moreover, numerous employees who have complained to Weatherford were not subject to any retaliatory actions. Indeed, Gould, who was not selected for the reduction-in-force and was called back to work at Williston, made numerous complaints to Weatherford and refused multiple assignments. (Appx., Vol. II, Pages 348-50, 360-61). However, the ALJ and ARB erroneously disregarded these facts in favor of Gould's testimony. This is inconsistent with the facts presented to the ALJ and the ARB.

Finally, both the DOL and Ayres rely extensively on alleged temporal proximity to establish causation. (*See generally*, Ayres Brief at DOL Brief).

However, because Ayres' assignment in Williston was limited to only six weeks, any argument as to temporal proximity is meaningless and irrelevant, as any complaint would necessarily be close to the reduction-in-force. *See Brown-Baumbach v. B&B Auto, Inc.*, No. 09- 3962, 2010 U.S. Dist. LEXIS 67472, *49-50 (E.D. Pa. July 6, 2010) (*aff'd*, in part *Brown- Baumbach v. B&B Auto, Inc.*, 437 F. App'x 129 (3d Cir. 2011) (temporal proximity was rendered essentially meaningless due to plaintiff's short period of employment). Moreover, temporal proximity, along, is insufficient to establish causation for retaliation. *See Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 721-72 (6th Cir. 2012).

Accordingly, substantial evidence does not support the Decision.

### 3.    Ayres Cannot Prove Pretext Or Any Alleged Animus.

As an initial matter, the DOL alleges that it somehow can prove pretext because Weatherford has "shifting justifications" for its decision to include Ayres in the reduction-in-force. (DOL Brief at 29). This is false. Weatherford has consistently maintained that Ayres was included in the reduction-in-force due to the slow work at the Williston location and due to Ayres' own work performance. It is without question that an employer can have multiple legitimate business justifications for an adverse action. *See, e.g., Davis v. Landscape Forms, Inc.*, 640 Fed. Appx. 445, 453 (6th Cir. 2016) (employer may have multiple legitimate reasons for adverse action, each of which plaintiff must prove is pretext); *see also Bhupendra*

*Parikh v. Cleveland Hardware & Forging Co.* No. 1:04 CV 2263, 2006 U.S. Dist. LEXIS 34912 *24 (N.D. Ohio May 2006) (employer may have multiple legitimate reasons for adverse action, each of which the plaintiff must prove is pretext). The DOL's attempt to turn Weatherford's multiple legitimate reasons for including Ayres in the reduction-in-force into a negative is an untenable position.

As to Weatherford's legitimate reasons, as set forth above, there is no dispute that work was slow at the Williston location and that Ayres and other employees had little to no work. Accordingly, Weatherford was forced to initiate a reduction-in-force. During the Litigation, the District Court confirmed that the reduction-in-force was lawful and legitimate.

As to Ayres' selection for the reduction-in-force, Ayres was chosen for the reduction-in-force based solely upon his performance issues, which consisted of Ayres' poor work ethic, issues with co-workers, and refusal to take certain assignments due to the general lack of work for Equipment Operators. (Appx., Vol. III, Page 573). After Ayres was chosen for the reduction-in-force, Weatherford attempted to find Ayres another position but was unable to do so. (Appx., Vol. I, Pages 236-237). Incredibly, the ALJ disregarded Weatherford's reasons for including Ayres in the reduction-in-force without having any evidence that Weatherford retained a single employee that performed worse than Ayres. Contrary to the ALJ's Decision, "[courts] will not reevaluate business decisions made in good

faith … [i]t is enough the decision was genuinely and honestly made in an attempt to select the employees retained on the basis of performance related considerations." *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1285 (7th Cir. 1987).

As to pretext and alleged animus, several of the employees who retained their positions had previously filed complaints with Weatherford, including Gould, who was not included in the reduction-in-force. (Appx., Vol. I, Pages 348-50, 360-61). Indeed, the post-hearing depositions prove that the filing of complaints or the refusal to perform assignments in violation of regulations were not actions Weatherford discouraged or for which it retaliated. Moreover, even if Ayres was not included in the reduction-in-force, he had requested to be transferred out of the Williston branch. (Appx., Vol. I, Page 63). Accordingly, because Ayres' position was eliminated as part of a legitimate, non-discriminatory reduction-in-force, and because Ayres cannot establish pretext or animus, his claim fails as a matter of law.  Thus, because the ALJ's Decision and the ARB Decision are inconsistent with the substantial evidence and an abuse of discretion, the ARB Decision should be reversed.

**D.**    **The Damages Awarded In The Decision Are Erroneous.**

The damages awarded by the ALJ are extreme and not supported by the evidence. As to the award of compensatory damages, the ALJ completely disregarded the after-acquired evidence doctrine and Ayres' failure to mitigate his damages. Because Weatherford's policies permitted discharge upon discovering

Ayres' resume fraud, Ayres' damages should have been cut off as of October 27, 2014 when the fraud was discovered. *See Southworth v. Northern Trust Secs.*, 2013-Ohio-2917, ¶ 13 (Ohio Ct. App., Cuyahoga County July 3, 2013) (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996)). The defense is applicable "[w]here an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited." *Thurman*, 90 F.3d at 1168; *see also McKennon*, 513 U.S. at 362.

Further, Ayres' damages should have been tolled as of September 2013, and cut off in April 2014 due to Ayres' failure to mitigate his damages. Ayres was discharged in September 2013 from J.P. Jenks for misconduct and placed on disability in April 2014. *See e.g. Patterson*, 90 F.3d at 936 (plaintiff breached duty to mitigate by engaging in actions to cause termination); *Dreiger v. Mid-American Club*, No. 95C4490, 1998 U.S. Dist. LEXIS 2536 (N.D. Ill. Mar. 5, 1998) (same, excluding from backpay award amount plaintiff would have earned if not fired for own misconduct). Ayres subsequently filed suit against J.P. Jenks in Mahoning County, Ohio in the case captioned *Daniel Ayres v. J.P. Jenks, Inc. et al.*, No. 14CV1631, asserting disability discrimination in violation of O.R.C. §§ 4112.01 *et seq*. Ayres' lawsuit against J.P. Jenks was voluntarily dismissed on June 26, 2017 and, thus, Ayres should not be able to double-dip in his efforts to obtain lost wages

after his discharge. Ayres presents no evidence to dispute J.P. Jenks' discharge or showing that it was without cause.

Finally, it is undisputed that Ayres obtained employment almost immediately after leaving Weatherford. Ayres earned a substantial amount during his post-Weatherford employment, which reduced his lost wages to: (1) $5,442.45 for 2012; and (2) $21,298.58 in 2013, which should be reduced to $8,564.35 to coincide with his termination from J.P.Jenks. Accordingly, the award of compensatory damages in the Decision is not supported by the substantial evidence and should be reversed.

### E.    The ARB Properly Reversed The Punitive Damages Award.

As an initial matter, Weatherford agrees with the DOL on the issue of punitive damages – that the ARB properly reversed the ALJ's award of punitive damages.  This Court should uphold the ARB's ruling on the issue of punitive damages and deny Ayres' appeal.

It is undisputed that Ayres failed to request punitive damages at any time during the proceedings.  Indeed, the ALJ cites this fact in his award for punitive damages.  Accordingly, Ayres waived his right to an award of punitive damages.

Despite this fact, the ALJ unilaterally awarded punitive damages in the amount of $25,000 to Ayres.  In doing so, the ALJ improperly formulated his own arguments based upon his own erroneous factual determinations at the expense of Weatherford.  In fact, the ALJ states "I find these arguments in favor or an award of

punitive damages, for the most part, compelling." Importantly, no arguments were presented to the ALJ in support of punitive damages. Furthermore, it is of no surprise that the ALJ found the arguments to be "compelling", considering he hand-selected the facts and arguments to present to himself. The damage and prejudice propounded upon Weatherford as a result of the ALJ's decision to create arguments in support of Ayres out of this air is of great magnitude.

Even if Ayres did not waive his right to seek punitive damages, the ALJ's determination to award punitive damages is not supported by the evidence. There is no evidence that could reasonable – or even possibly – lead to a conclusion that Weatherford acted with the requisite culpability or with "reckless or callous disregard for [Ayres'] rights, as well as the intentional violations of law" to support an award of punitive damages. Despite the ALJ's finding that Weatherford failed to conduct a sufficient investigation into Ayres' complaints, Weatherford established that it investigated the sole complaint brought forth by Ayres in September 2012. Because this was the only complaint concerning activity protected by the STAA, Weatherford did not conduct any other investigation as to Ayres' complaints because no such complaints existed.

Further, as to the ALJ's decision concerning Crabb's threats, the evidence shows that such threats were not to be taken literally. In fact, the post-hearing depositions demonstrate that Weatherford's employees did not believe the filing of

a complaint would result in any adverse actions. Indeed, Gould, along with other employees, filed numerous complaints, yet maintained employment with Weatherford. Additionally, the alleged threat by Crabb was not to Ayres, but was made to *all* employees at the Williston branch. Thus, Ayres cannot rely upon the alleged threat by Crabb to form the basis of any retaliatory conduct in connection with his alleged complaints. Accordingly, the evidence does not support an award for punitive damages.

Finally, Ayres' estate is precluded from seeking an award of punitive damages because punitive damages do not survive a plaintiff's death. *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("[i]t is well-established that remedial actions survive the death of the plaintiff, while penal actions do not.") (citing *Schreiber v. Sharpless*, 110 U.S. 76, 80 (1884) ([a]tcommon law actions on penal statutes do not survive [the plaintiff's death], and there is no actof Congress which establishes any other rule in respect to action on the penal statutes of the United States.")); *see also Kettner v. Compass Group USA, Inc.*, 570 F.Supp.2d 1121, 1134 (D. Minn. 2008) (denying Plaintiff's estate punitive damages because ADA is remedial in nature and"actions which are penal do not survive the death of a party") (internal citations omitted).

Ayres fails to cite to any federal law or other law binding upon this Circuit which holds that punitive damages do not survive the death of a plaintiff. Rather,

*Ayres* relies upon a Illinois state supreme court case. (Ayres Brief at 34, citing *National Bank of Bloomington v. Norfolk & W. Ry.Co.*, 73 Ill. 2d 160 (1978)). *National Bank* does not support Ayres' position.  At issue in *National Bank* was liability with respect to a railway car striking plaintiff resulting in his death. The *National Bank* court expressly held that punitive damages *do not survive* the death of a plaintiff under the common law. *Id.* at 173-74.  The *National Bank* court held that punitive damages only survive the death of a plaintiff when authorized by statute. *Id*.  As to that issue, the *National Bank* court found that the statute at issue supported an award for punitive damages because the death of the plaintiff resulted from the incident at issue in the matter – liability for hitting the plaintiff. *Id.* at 174.

Here, Ayres STAA complaint and his subsequent death are wholly unrelated. Moreover, the STAA does not support a finding that punitive damages for alleged violations survive the death a plaintiff.  Accordingly, *National Bank* does not support Ayres' position and, if anything, supports a finding that Ayres' is not entitled to punitive damages.

As to the penal nature of punitive damages, Ayres attempts to discredit the long-standing Supreme Court history holding that punitive damages a penal remedy by citing to *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th 1977) and *Carlson v. Green*, 446 U.S. 14, 22 (1980). First, *Murphy* does not address punitive damages whatsoever.  Second, as to the factors addressed in *Murphy* and cited by

33

Ayres in the Ayres Brief, Ayres alleges that *Murphy* supports a finding that the STAA is a remedial statute.  However, Ayres concedes that Weatherford's alleged violations of the STAA are "criminal in nature." (Appx. Vol. III, Page 536).

Finally, any award of punitive damages is wholly inconsistent with *Murphy*, because the facts do not support an award of punitive damages and the ALJ's award is disproportionate to the alleged harm suffered by Ayres.  As set forth above, there is no evidence to support a finding that Weatherford acted with the appropriate culpability to award punitive damages.  Accordingly, *Murphy* is inapplicable and, even if it was applicable to punitive damages, *Murphy* does not support punitive damages in this matter.

As to *Carlson*, Ayres prefaces his citation to *Carlson* by alleging that simple semantics do alter the remedial or penal nature of damages, but then immediately relies upon the *Carlson* Court's use of the term "remedial" in passing with respect to punitive damages. (Ayres Brief at 31).  However, "[t]he [Supreme Court's] cases abound with the recognition of the penal nature of punitive damages." *Browning-Ferris Indus. V. Kelco Disposal*, 492 U.S. 257, 297 (1989).

Recognizing this well-established tenet of law, the ARB reversed the ALJ's decision on these grounds.  Accordingly, the ARB's decision to deny punitive damages was appropriate and Ayres' appeal should be dismissed.

## F.    AYRES IS NOT ENTITLED TO ATTORNEYS' FEES

Ayres only briefly discusses the attorney fees awarded by the ALJ and the ARB. (Ayres Brief at 75-76).  However, Ayres is not entitled to attorneys' fees for either matter.

As to the fees awarded, Ayres admits that many of these fees include work that was performed for the Litigation. (Ayres Brief at 75-76).  In fact, Ayres admits that the work and evidence developed in the Litigation was relevant to the STAA Claim and, because of this, the ALJ's award of attorney's fees for the work performed in the Litigation was appropriate. (Ayres Brief at 75).  Ayres should not be permitted to obtain attorneys' fees for work performed in the Litigation on the grounds that it was relevant to his STAA claim, while simultaneously arguing that the issues and claims between the Litigation and STAA claim are different and do not support a bar by res judicata and/or collateral estoppel.

Ayres also attempts to justify the ALJ's decision by alleging that *Inwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531 (6th Cir. 2008) support such an award because "litigants mar raise alternative legal grounds for a desired outcome, and the rejection or failure to reach certain grounds is not a sufficient reason for reducing an attorney fee award to the prevailing party." (Ayres Brief at 75). *Inwalle* involved whether damages should be reduced where the plaintiff is not successful on all claims asserted in the same lawsuit. *Id.* at 554.  However, Ayres' retaliation claim in

the Litigation and Ayres' retaliation claim in this matter are not alternative grounds for relief – these are separate matters. Accordingly, Ayres has not provided any authority supporting an award for attorneys' fees for work performed in the Litigation, and Ayres' request for these fees confirm that his STAA claim is barred by res judicata and/or collateral estoppel.

Finally, Ayres does not even address Weatherford's argument that fees should not be awarded because the ALJ explicitly found that this was a close case. Ayres' has thus failed to address the many authorities cited by Weatherford supporting a reversal of the ALJ's attorneys' fees order due to the closeness of the case and Weatherford's good faith. *See, e.g., White & White, Inc. v. American Hospital Supply Corp.,* 786 F.2d 728, 730 (6th Cir. 1986) ("[w]e have described several circumstances in which a denial of costs is a proper exercise of discretion under the rule. Such circumstances include ... cases that are 'close and difficult.'") (quoting *United States Plywood -1 Corp. v. General Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966)); *Knology, Inc. v. Insight Communs. Co.. L.P.*, 460 F.3d 722, 728 (6th Cir. 2008) (both the closeness of the case and the losing party's good faith support denying the award of costs); *Corwin v. Quinonez*, 2013 U.S. Dist. LEXIS 334, *5-6 (N.D. Ohio Jan. 2, 2013) ("the difficulty of discerning the relevant legal authority ... and the extent of the factual analysis involved, made for the type of close and difficult case in which this Court is not inclined to award costs and fees"); *Chemetall*

*GmbH v. ZR Energy, Inc.*, 2002 U.S. Dist. LEXIS 158, *1 6-17 (N.D. Ill. Jan. 7, 2002) ("[t]he fact that liability ... presented in close questions[] is an important factor to be considered in determining whether to exercise discretion in favor of awarding attorneys' fees"); *Aftermarket Tech Corp. v. Whatever It Takes Transmissions*, No. 3:00CV-326-R, 2005 U.S. Dist. LEXIS 22496, *5 (W.D. Kent. Oct. 3, 2005) (award of attorney fees and costs was not justified in close case); *Krupp v. Metropolitan Life Ins. Co.*, 174 F. Supp. 2d 545, 549 (E.D. Mich. 2001) (same); *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir. 2000) (same); *Estate of Thompson v. Sun Life Assur. Co. of Can.*, No.4:07-CV-594-Y, 2009 U.S. Dist. LEXIS 27114, *13 (N.D. Tex. Mar. 31, 2009)("[w]here the opponent's position is not groundless or has some merit an award of attorneys' fees is not warranted."); *Rosser v. Pipefitters Union Local* 392, 885 F. Supp. 1068, 1070 (S.D. Ohio 1995) ("[t]he Sixth Circuit specifically approved a denial of costs in close and difficult cases involving numerous... exhibits, transcript pages, and lengthy opinions."). "The closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case." *White & White*, 786 F.2d at 732-33.

Accordingly, the ALJ's and ARB's award of attorneys' fees is not supported by the substantial evidence and should be reversed.

## V.     <u>CONCLUSION</u>.

For the foregoing reasons, the Administrative Review Board's November 18, 2020 decision and order, and March 24, 2021 order should be reversed on all issues other than the issue of punitive damages.

Respectfully submitted,


<u>/s/David A. Campbell</u>
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Andrea V. Arnold (0099455)
**LEWIS BRISBOIS BISGAARD & SMITH, L LP**
1375 E. 9th Street, Suite 2250
Cleveland, OH  44114
Telephone:  216-344-9422
Facsimile:    216-344-9421
Email:david.a.campbell@lewisbrisbois.com
        donald.slezak@lewisbrisbois.com
        andrea.arnold@lewisbrisbois.com

*Attorneys for Weatherford U.S., L.P.*

## <u>6 CIR. R. 32 CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure and 6 Cir. R. 31(g)(1) and 6. Cir. R. 32 (a), the undersigned counsel, relying on the word county of the word-processing system used to prepare this document, certified that the foregoing complies with the 13,000 word count limit issued by this Court's February 18, 2022 briefing schedule.  Section I through Section VI of this Brief contain 12,959 words.

/s/David A. Campbell
David A. Campbell (0066494)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically on this 22nd day of September, 2022.  Notice of this filing will be sent to all parties, when applicable, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.  If parties will not receive notice via the Court's electronic filing system, a true and correct copy of the foregoing will be served via regular United States Mail, postage prepaid, upon the following:

Martin S. Hume (0020422)
Martin S. Hume Co., L.P.A.
6 Federal Plaza Central, Suite 905
Youngstown, Ohio 44503
Telephone: (330) 746-8491
Email: mhume1@ameritech.net

*Attorney for the Estate of Daniel A. Ayres*

Linda H. Wiles
U.S. Department of Labor
Office of the Solicitor/OHS Division
200 Constitution Avenue, N.W., Suite S-4004
Washington, D.C. 20210
Wiles.Linda.H@dol.gov

*Attorney for the Department of Labor,*
*Administrative Review Board*

*/s/David A. Campbell*
David A. Campbell (0066494)